78h 411
164a 244
78h 411
59ad529

PETER WALSH, Respondent, *v.* JOHN McARDLE, as Administrator, etc., of CATHERINE DUFFY, Deceased, Appellant.

*Code of Civil Procedure, § 829 — evidence inadmissible thereunder — the rule is the same whether an affirmative or a negative is sought to be proved.*

It is the purpose of section 829 of the Code of Civil Procedure to exclude an interested witness from testifying, first, to any transaction between himself and the deceased, or to any in which he in any manner participated, and, second, to all communications between the deceased and the witness, including communications in the presence or hearing of the witness, if he in any way was a party thereto, or communications to any one of two or more persons, if all are interested.

The rule is the same whether the object be to prove an affirmative or a negative, and an interested witness can no more testify that a conversation or an interview concerning a contract or transaction between him and the deceased did not than he can testify concerning a conversation which did take place.

APPEAL by the defendant, John McArdle, as administrator, etc., of Catherine Duffy, deceased, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 23d day of May, 1893, upon the report of a referee, and also from an order made at the New York Special Term on the 10th day of January, 1893, and entered in said clerk's office, confirming the report of the said referee.

*Rufus M. Williams*, for the appellant.

*Augustus H. Vanderpoel*, for the respondent.

PARKER, J.:

The referee to whom the questions relating to a disputed claim of the plaintiff against the estate represented by the defendant were referred out of Surrogate's Court, found as facts that plaintiff, previous to the time of entering the employment of defendant's intestate, was receiving a salary of ten dollars a week; that she offered to pay him the same sum if he would enter her service; that he accepted the offer and performed the services requested from July 4, 1886, to the time of her death, November 19, 1890, making the amount of salary earned by him $1,590; that she paid him on

account ten dollars a month during such period, aggregating $530 ; that in addition the estate should be credited with $450.90, which a decree of Surrogate's Court had found to be due the defendant from this plaintiff, and as a conclusion of law that plaintiff should recover the agreed sum less offsets, with interest, amounting to $688.57.

In passing, it may be said that the finding of the referee to the effect that plaintiff is indebted to the defendant in the sum of $450.90, as adjudged by the decree of the surrogate, was in reality founded upon a decree made in a discovery proceeding instituted by the administrator against Peter Walsh (this plaintiff), in which it was adjudged that Walsh, after the death of defendant's intestate, unlawfully took and carried away from the premises in which she died the sum of $450.90.

It further appeared upon this trial that after her death he overhauled her receipts and papers and burned a few of them, which turn out to have been receipts given by him to her for moneys paid him from time to time. This fact is testified to by two witnesses who were present at the time when he selected these receipts from a great number for burning. It is true that he undertakes to deny it, but his efforts in that direction are accompanied by admissions that these parties were with him on the occasion to which they testify, and that he did then burn some papers, which he describes as old newspapers and scraps.

The appellant contends that, in view of plaintiff's conduct in unlocking the receptacle in which the intestate kept her valuables, taking from it bank books, money, deeds and other useful papers, and his misconduct in destroying the receipts given by him to Mrs. Duffy, thus depriving the defendant of the opportunity to use them in this action, considered in connection with the testimony of several witnesses to the effect that they had overheard conversations between plaintiff and defendant's intestate in which it was asserted by Mrs. Duffy, and not denied by plaintiff, that his compensation was ten dollars a month, with his board, washing and mending added, and that such conversations had resulted at different times in the payment by her of small sums of money to him, accompanied by a demand on her part, and acquiescence on his, that he give a receipt for a month's salary at the rate of ten dollars per month,

the findings by the referee were against the weight of evidence, and
for that reason the report and the judgment entered thereon should
be set aside.

Without determining whether his position in such respect is well
taken, we pass to the consideration of exceptions taken to the admis-
sion of certain testimony offered on the part of the plaintiff against
the objection that it was not admissible under section 829 of the
Code of Civil Procedure.

In order that the relation which such testimony bears to other
evidence in the case may be readily understood, a brief statement
of the facts beyond that already given will be made.

We have already observed that the referee found that the plain-
tiff received his board, washing and mending and ten dollars a
month during all the period that he was employed by Mrs. Duffy.
It was the contention of the defendant that this sum represented
the price agreed upon between them. Now, plaintiff, in order to
establish his claim, called one Alexander MacDonald, who prior to
July, 1886, was, in company with this plaintiff, working for the
Metropolitan Express and Van Company. He testified that he was
present at a conversation which occurred between plaintiff and Mrs.
Duffy, in the course of which she asked the plaintiff to come and
live with and take care of her, and she would pay him the sum for
wages he was then receiving, and in addition "at her death would
leave him all right." The plaintiff testified that he was receiving
ten dollars a week from the company at that time, and other wit-
nesses described the work which they saw plaintiff do for Mrs.
Duffy on different occasions. But no witness on behalf of the
plaintiff, other than MacDonald, undertook to throw light upon the
question in dispute as to what was the agreement between Mrs.
Duffy and the plaintiff, touching the amount of his compensation.

After plaintiff had rested defendant undertook to show affirma-
tively that the amount which Mrs. Duffy actually paid the plaintiff,
to wit, ten dollars a month, was the price agreed upon between them
as the sum of money to be paid him in addition to his board, wash-
ing and mending. Defendant called several witnesses, who testified
to conversations which they allege took place between the plaintiff
and Mrs. Duffy in their presence — conversations which, if true,
make it very clear that the plaintiff received from Mrs. Duffy from

month to month the sum which she had agreed to pay him. After defendant had rested plaintiff was called in rebuttal, and was asked whether the specific interviews and conversations to which the several witnesses on the part of the defendant had testified took place? And his answers were received against proper objections and timely exceptions on the part of defendant.

The questions and answers following are but typical of others occupying nearly seven pages of the record: " Q. On page 65 Mrs. Kiernan testifies that in August, 1887, she heard a conversation between you and Mrs. Duffy, it being the first conversation that she heard between you, in which you stated you wanted money, and Mrs. Duffy said you were getting ten dollars a month and that you were not worth half that. Did that conversation ever take place? [Same objection; same ruling and exception.] A. No. Q. On the same page Mrs. Kiernan testifies that in January, 1888, she was present at an interview when you asked Mrs. Duffy for money, and she refused to give it, saying that she had already given you over and above his wages, and, on the following page, that Mrs. Duffy stated that your wages were ten dollars a month. Did that interview ever take place? [Same objection; same ruling and exception.] A. No. Q. On page 73 Nellie Duffy testifies that she recollected an occasion when a controversy took place between Mrs. Duffy and yourself as to whether Mrs. Duffy owed you any money. Did that interview ever take place? [Same objection; same ruling and exception.] A. No."

It will be observed that plaintiff was permitted to deny that the alleged conversations between himself and the deceased ever took place.

The courts have declared the purpose of the statute to be to exclude an interested witness from testifying, *first*, to any transaction between himself and the deceased, or in which the witness in any manner participated, and, *second*, to all communications between the deceased and the witness, including communications in the presence or hearing of the witness, if he in any way was a party thereto, or communications to either one of two or more persons, if all were interested. (*Holcomb* v. *Holcomb*, 95 N. Y. 316.)

The rule is the same whether the object be to prove an affirmative or a negative. The interested party cannot testify that an

alleged conversation or an interview concerning the agreement or transaction did not take place any more than he can testify concerning the conversation. Our attention is called to certain cases which it is contended justify the rulings of the referee, and which it is insisted considerably relax the rigor of the more early decisions, which undertook to apply and enforce the statute.

In *Pinney* v. *Orth* (88 N. Y. 447–451) a party to the action was permitted to testify that a witness who had detailed a conversation which he alleged took place between the interested party and the deceased, at a place named, was never present at the place specified when any such conversations took place. The court held that it was proper for him to so testify; that the statute did not preclude the survivor from testifying to extraneous facts or circumstances tending to show that a witness who had testified affirmatively to such a transaction or communication had testified falsely.

By way of illustration, the court said that it would have been entirely proper, for instance, for the survivor to have testified that he was at some other place than the city of New York, where and when the conversation was alleged to have taken place. But, said the court, "the language of the prohibition is sufficiently broad to prohibit the survivor from testifying that any particular communication or transaction did or did not take place personally between himself and the deceased. *   *   *"

It should be remarked, in this connection, that the questions put to, and responses made by, the plaintiff amounted to a denial of certain communications alleged to have taken place between him and Mrs. Duffy. Such was their intended purpose and effect. Had defendant's witnesses been called upon to fix the time and place of the conversations related by them, and then plaintiff, in rebuttal, had been asked whether he was present at the times and places mentioned, and he had answered that he was not, his testimony would have been within the protection of *Pinney* v. *Orth* (*supra*).

*Lewis* v. *Merritt* (98 N. Y. 206) was based on *Pinney* v. *Orth.* The plaintiff in that action was the executor of his testator, and as a witness in his own behalf testified that he saw certain notes, the possession and ownership of which were in issue, in a box in the room of his testatrix the morning before her death, and that the defendant was in the testatrix's room during the day preceding her death,

and had opportunity to take the notes from the box without authority.

The trial court having refused to permit the defendant to answer the questions :

1. Whether he had taken the notes from any trunk or any person ?

2. Whether at the time of the conversation, which was alleged to have occurred two days before the testatrix's death and in her presence, "he had possession of the notes."

The correctness of the ruling came before the appellate court for decision and it was held that it was competent for the defendant to testify that he did not take the notes from the box, and thereby rebut the inference which the plaintiff by his testimony attempted to justify, namely, that he had wrongfully abstracted them. The second question was regarded as much nearer the border line than the first, but it was considered admissible as furnishing an inference on the leading issue, whether the intestate gave the notes to defendant, the court stating, however, that it was not offered for the purpose of establishing an affirmative defense.

In the still later case of *Clift* v. *Moses* (112 N. Y. 426) the cases already referred to were considered and discussed, but not extended, the court alluding to the fact that in *Pinney* v. *Orth* the range of permissible contradiction was confined within such narrow limits as not to include testimony by the survivor of what was or was not said between the parties at a conversation sworn to by a witness produced by the other side, even when offered for the sole purpose of contradicting the witness' narration of the transaction.

The respondent does not call our attention to any case which he regards as giving stronger support to his contention than those we have referred to, and we think his failure to do so was due not to his lack of diligence, but to its non-existence.

The courts have not abrogated the construction long ago given to the statute which accords to it the effect of depriving a survivor from testifying that a certain communication or transaction did or did not take place personally between himself and the deceased, although a witness has already repeated the communication and described the transaction. The cases referred to *supra* furnish seeming, not real, exceptions to the rule.

The judgment should be reversed, with costs to the appellant to abide the event, and a new trial ordered before another referee.

VAN BRUNT, P. J., and FOLLETT, J., concurred.

Judgment reversed, a new trial ordered before another referee to be appointed in the order to be entered hereon, with costs to appellant to abide event.