Carr *v.* Weld.

--- --- --- --- --- --- --- --- ---

## Carr *vs.* Weld and others.

1. An agreement, made in the presence of an attorney, between his client and a third person, is not a privileged communication.

2. The answer of a defendant, that he has seen the answer of another defendant in the cause, and that the same is true, cannot avail to make such answer evidence for himself, when the answer referred to was not then filed, and there is nothing to identify it with the answer afterwards filed by such co-defendant.

3. A levy on sufficient property, under a *fieri facias, prima facie* satisfies the judgment.

This cause was argued upon bill, answer, and proofs.

*Mr. J. Wilson,* for complainants.

*Mr. E. T. Green,* for defendants.

THE CHANCELLOR.

The are two preliminary questions to be decided in this case before we come to the merits.

The principal witness for the complainant, is E. W. Scudder, Esq., the attorney and counselor who had been ployed by the defendant E. D. Weld, for his brother B. C. Weld, another defendant, in entering up the judgment to B. C. Weld, which is the subject matter of the controversy. He was afterwards employed by the complainant and his partner, to draw the article dissolving their partnership, at the execution of which, it is alleged that B. C. Weld, by his agent, the defendant E. D. Weld, agreed to enter satisfaction of that judgment upon the record. The bill in this case, is to enforce that agreement. It is insisted by the defendants, that any thing that came to the knowledge of the witness at that time, was a privileged communication, which he could not disclose. It does not appear to me from the facts in evidence, that Mr. Scudder was at that time the counsel or attorney of B. C. Weld, or of any of the defendants. But if it did so appear, he would still be obliged to disclose and testify to any agreement that was made between the parties in his presence. Such agreements are not communications made to him by his client, but facts that occur in his presence; they are not secret, or to be concealed from the opposite party, but are dealings with that party, and from that fact are necessarily within his knowledge. They are not within the terms or reason of the rule, that prohibits counsel or attorneys from disclosing communications made to them by clients. *Coveney* v. *Tannahill,* 1 *Hill* 33 *; Weeks* v. *Argent,* 16 *Mees. & Wels.* 817.

The evidence of Mr. Scudder is, therefore, competent, and must be received in the cause.

Another preliminary question is, the effect of the answers of the defendants in the suit. That of Edward D. Weld cannot be received as evidence for his co-defendants, B. C. Weld, and R. A. Poole, and Mary E. Poole his wife, with whom, or one of them, the controversy is. The answers of the other defendants, so far as they state that they have seen the answer of E. D. Weld, and that the same is true, cannot be of any avail. No answer of E. D. Weld was on file when these other answers were sworn to, and there is nothing to identify the paper which E. D. Weld, some days afterwards, swore to and filed as his answer, with the paper shown to the other defendants.

The complainant, Carr, seeks to have a judgment entered against him and Stephen Koons, in favor of Benjamin C. Weld, satisfied of record, and to restrain all proceedings to collect the same from him.

The complainant and Koons composed the firm of Charles Carr & Company, and on the 3d day of January, 1859, gave a bond and warrant of attorney to B. C. Weld for $3943, upon which judgment was entered, and execution issued on the next day; a levy was made upon all the tools, machinery, and stock in the works and foundry of Charles Carr & Company. The consideration of the judgment was money advanced by B. C. Weld, through his brother and agent, E. D. Weld, to establish the business, and was advanced in 1855, to Charles Carr; he had bought the establishment of Bird & Weld, who had failed, at the request of E. D. Weld, who was one of that firm. The money was advanced by B. C. Weld, on condition that E. D. Weld should, by an irrevocable power of attorney, have the control and management of the whole, and have one-third of the profits. Within a few months, Koons was taken into partnership by Carr, and upon the same terms as to control by E. D. Weld. A judgment bond, which had been given by Carr to B. C. Weld about the time when the money was advanced, was surrendered, upon giving the bond and warrant of attorney by Carr & Koons; no judgment had ever been entered upon Carr's bond. In May, 1860, $2159.17

was paid by Carr & Koons to B. C. Weld, on the judgment, and a few days afterwards the judgment was assigned by B. C. Weld to the defendant, Mary Elizabeth Poole, the daughter of E. D. Weld. On the 30th day of January, 1862, Carr & Koons, by a written agreement of that date, dissolved their partnership. Koons was to continue the business, have all the property and assets, and was to assume all the debts, and indemnify Carr from them. The judgments of B. C. Weld were to be satisfied of record, and a new judgment was to be confessed by Koons, and secured by a levy on the property. E. D. Weld was present at the transaction, and supposed to be the agent of B. C. Weld, and he agreed to have satisfaction entered of the judgment of B. C. Weld, and to accept the new bond of Koons, which was executed in his presence to B. C. Weld, and with his consent left with Mr. Scudder as the attorney of B. C. Weld. E. D. Weld, as the agent of his daughter, had, in her name, purchased the judgment of B. C. Weld, and paid for it with her money (as is alleged) in his hands, but did not disclose the fact to Carr or Koons, or object to the bond and warrant of attorney from Koons being made out to B. C. Weld. Koons continued the business under control of E. D. Weld, until April, 1863, when he sold out the establishment to Helen F. Weld, the second daughter of E. D. Weld, aged about twenty-three years, who afterwards sold it to Lalor and Jamison for $4250. Both these sales were negotiated by E. D. Weld; Koons being a mere mechanic, knowing nothing of the financial situation of the establishment, but trusting the whole to E. D. Weld, to whom he had given a power of attorney, on its face irrevocable, to control and manage the affairs of the concern absolutely.

The proceeds of the sale to Lalor and Jamison were not applied to pay off the judgments to B. C. Weld, which yet remains unsatisfied of record. The property sold to them was subject to the levy duly made in January, 1859, under the execution issued upon this judgment, and it clearly appears that it was sufficient to satisfy the amount due on the judgment.

The complainant contends that E. D. Weld was the real owner of the judgment, and that even if B. C. Weld did originally advance the money for which it was confessed, yet that the money paid to B. C. Weld, upon the transfer to M. E. Poole, was the money of E. D. Weld, and not of M. E. Poole, who, it is insisted, had no estate or property sufficient to purchase it; and that, at all events, E. D. Weld was the agent of M. E. Poole, as well as of B. C. Weld, and she was bound by his agreement, on the faith of which complainant sold his interest; and that the complainant, having no notice or knowledge of the transfer of the judgment, was entitled to rely on an agreement made by a known agent of B. C. Weld, whom he supposed owned the judgment.

The whole transaction is strongly marked with circumstances indicating fraud. The conduct of E. D. Weld is such as to taint all his acts, as well as to discredit him as a witness. The attempt to sell to his daughter Helen F., and through her to Lalor and Jamison, the whole assets of the firm, and to dispose of the money without satisfying the judgment alleged to be held by his daughter, M. E. Poole, which was a lien upon this property, and which, without any agreement, Carr was entitled to have so applied, is a plain, palpable fraud. This, besides the improbability of the story, is sufficient to deprive him of all credit, when he testifies that the money which he paid out of his own pocket to B. C. Weld for the judgment, was money of Mrs. Poole in his hands.

If Mrs. Poole owned this judgment in good faith, she by her negligence, or connivance with her father, allowed him to sell and take away the property on which it was levied, and which Carr had left subject to the levy, for the express purpose of satisfying the judgment; the property with which Carr had paid it.

Besides this, the complainant is entitled to relief on the ground, that as against him, this judgment was satisfied by the levy. It is a settled principle at law, that a levy on sufficient property under a *fieri facias*, satisfies the judgment.

The authorities agree in this. 2 *Tidd's Pr.* 1059; *Clerk* v. *Withers*, 2 *Ld. Raymond* 1072 & 1 *Salk.* 322; *Bac. Abr.*, *Title, Execution D;* 1 *Burrill's Prac.* 299; *Hoyt* v. *Hudson*, 12 *Johns. R.* 208; *Ex parte Lawrence*, 4 *Cow.* 417; *Jackson* v. *Bowen*, 7 *Cow.* 13; *Wood* v. *Torrey*, 6 *Wend.* 562; *Alderman* v. *Share*, 7 *Wend.* 220; *Ladd* v. *Blunt*, 4 *Mass.* 403.

This case does not come within any of the exceptions to that rule. And here the equities of the complainant are so clear, and the reason for the applicatien of the rule so evident, that he would be entitled to relief, were there no reason to suspect any fraud or false dealing on part of any of the defendants.

There must be a decree restraining the defendants from issuing any execution, or taking any proceedings to enforce this judgment as against the complainant, and that satisfaction of the same be entered of record by the defendants, Benjamin C. Weld and Mary E. Poole.