[No. 29489. Department One. March 1, 1945.]

GEORGE M. MARTIN, *as Executor, Respondent,* v. JOHN SHAEN, *Appellant.*[1]

[1]Reported in 156 P. (2d) 681.

*W. P. Guthrie* and *I. J. Bounds*, for appellant.

*Sydney Livesey* and *Lloyd A. Porter*, for respondent.

STEINERT, J.—The executor of the will and estate of Martha J. Shaen brought suit against the defendant, John Shaen, surviving husband of the decedent, to recover from the defendant the possession of certain real estate alleged to have been the sole and separate property of the decedent at the time of her death. The defendant resisted the action, claiming in his answer that the property was his sole and separate property, by virtue of a deed from the decedent. The cause was tried to the court without a jury, and at the conclusion of the trial the court rendered a decision in favor of the plaintiff. The defendant thereupon moved for a new trial, and upon a hearing of the motion it was denied. Findings were thereafter made, from which the court concluded that the property was the sole and separate property of the decedent at the time of her death. Judgment was entered, decreeing ownership of the property in the estate, and granting to the executor a writ of restitution for his immediate possession thereof. The defendant appealed.

The crucial question involved in this appeal is whether or not the trial court erred in sustaining respondent's objections to appellant's cross-examination of the executor and in denying appellant's incident offer of proof. The facts of the case, as shown by the evidence, and the circumstances connected with the trial court's rulings are as follows:

John Shaen, the appellant, and Martha J. Shaen, the decedent, intermarried on December 30, 1927. Mrs. Shaen was then nearly sixty-five years of age. It is conceded in

the briefs that Mr. Shaen was twenty-four or twenty-five years her junior. The parties lived together as husband and wife until about May, 1943, which was several months prior to Mrs. Shaen's death on October 1, 1943, at the age of eighty years.

Sometime before 1937, the exact date not being shown, one or the other of the parties purchased under contract the real estate here involved, consisting of one tract and a portion of another, the entire area aggregating approximately one and seventy one-hundredths acres. Whether the purchaser originally acquired the land as community property or as the separate property of the one or the other party is, to some extent at least, in dispute, although the uncontroverted evidence is that Mr. Shaen made all the payments out of his personal earnings. It is also uncontroverted that Mr. Shaen himself cleared and fenced the land. A house was then erected thereon, and from that time forward until shortly before Mrs. Shaen's death the parties occupied the property as their home. Furniture and furnishings for the house were bought and paid for by Mr. Shaen.

On May 24, 1938, Mr. and Mrs. Shaen, desiring to make some disposition of the property as between themselves, consulted Mr. E. A. Ferris, an attorney at law in Yakima. They were accompanied at the time by two neighbors and friends, Joseph D. Evans and his wife, Eva Evans, who served as witnesses to the written transactions had upon that occasion.

Acting as the attorney for both parties, and at their mutual request, Mr. Ferris drew two instruments, one denominated a "DEED AND BILL OF SALE" from Mrs. Shaen to Mr. Shaen and the other denominated a "STATUTORY QUIT CLAIM DEED," from Mr. Shaen to Mrs. Shaen.

The deed from Mrs. Shaen to Mr. Shaen assumed a threefold form and character, composing (1) a warranty deed of the real estate here in question, but reserving to her a life estate therein; (2) a bill of sale of all "personal property, goods or chattels, including choses in action" then owned or thereafter acquired by her, but likewise reserving

to her a life interest therein; and (3) a will, devising and bequeathing to Mr. Shaen all of the above-mentioned property and appointing him executor of the will. Mrs. Shaen signed and acknowledged the instrument as her free and voluntary act and deed and also declared it to be her last will and testament. Mr. and Mrs. Evans signed the document as subscribing witnesses.

The deed from Mr. Shaen conveyed and quitclaimed to Mrs. Shaen the real estate referred to above, "together with all other real, personal or mixed property of every kind, name, nature and description, including choses in action, located in the state of Washington, or elsewhere." That deed was also signed by Mr. and Mrs. Evans as witnesses.

After the two instruments had been executed by the respective parties and signed by the witnesses, Mrs. Shaen handed her deed to Mr. Shaen, while Mr. Shaen retained the one executed by him. Mr. Evans testified that, during the meeting at which the instruments were executed, Mrs. Shaen said to him:

"You and Eva [Mrs. Evans], I want you to know right now, you're signing this paper and it is my last paper and my mind is right and, no matter what happens, I don't want it changed."

Mrs. Evans testified in almost the same language.

At the conclusion of the meeting in the attorney's office, Mr. Shaen took both of the deeds and, accompanied by Evans, went to a bank, where he placed the two instruments in a safe-deposit box.

Sometime thereafter, Mr. Shaen removed the warranty deed from its place of deposit and, on December 30, 1940, filed it for record in the office of the county auditor of Yakima county. With reference to the quitclaim deed, Mr. Shaen testified that, so far as he knew, it was never taken out of the safe-deposit box.

In the spring of 1943, Mr. and Mrs. Shaen had some marital difficulty, which culminated in a criminal action charging him with having committed an assault upon her. That case was conducted by Mr. George M. Martin, a deputy prosecuting attorney, who is now the executor and plaintiff

respondent in this cause. The evidence does not reveal the outcome of the criminal action. The record does suggest, however, that at about that same time Mrs. Shaen left the family home permanently and, until her death, made her residence with two of her children by a former marriage.

It is also clear, from Mr. Martin's testimony, that, while conducting the criminal action, he was retained by Mrs. Shaen to draw a will for her and to record the quitclaim deed mentioned above, wherein Mr. Shaen had conveyed the property to Mrs. Shaen. The deed itself bears an endorsement evidencing the fact that it was filed for record at the request of Mr. Martin on April 13, 1943.

The record also discloses that on March 13, 1943, Mr. Shaen made the final payment, amounting to $341.25, on the real estate contract covering the real property here involved, and shortly thereafter received from the record owners thereof a deed which he filed for record on September 27, 1943.

Mrs. Shaen died October 1, 1943, leaving a will which she had executed on April 13th of that year and in which she left five dollars to each of her eight children by her former marriage, and the remainder of her estate to a daughter-in-law. Mr. Martin, who drew the will, was named therein as executor.

There is evidence in the record to the effect that sometime after Mrs. Shaen left the home, in the spring of 1943, one or more of her children entered the house, in Mr. Shaen's absence, and removed therefrom all, or a great part of, the personal property contained therein.

This action was commenced in January, 1944, by the executor to secure possession of the real property here involved, and the cause came on for trial in May of that same year.

Respondent's evidence was very brief. After establishing, by other witnesses, the death of Mrs. Shaen, the recording of the quitclaim deed from Mr. Shaen to Mrs. Shaen, and the right of the executor to bring this action, Mr. Martin testified that he obtained the quitclaim deed from Mrs.

Shaen and filed it for record on April 13, 1943. Appellant's counsel, on cross-examination, asked the witness where Mrs. Shaen got the deed. Respondent's counsel objected to the question being answered, on the ground that it involved a privileged communication between attorney and client. The court sustained the objection. Appellant's counsel thereupon offered to prove, among other things, by Mr. Martin, that Mrs. Shaen, at the instance of Mr. Martin, went to the bank where the deed was kept, removed it from the safe-deposit box, and gave it to Mr. Martin to be filed for record. The court rejected the offer.

Respondent then rested his case, and appellant moved for a dismissal of the action, on the ground of failure on the part of respondent to prove delivery of the quitclaim deed by Mr. Shaen to Mrs. Shaen, or to prove title in her. The motion was denied.

Appellant's counsel, in opening his defense, called Mr. Martin as an adverse witness. After some preliminary interrogation with reference to Mr. Martin's employment in the case, and after Mr. Martin had testified that he had not gone to the bank with Mrs. Shaen to get the quitclaim deed, but had received it from her at his office, appellant's counsel propounded to him this question: "Didn't you tell her to go down and get it out of the trust box?"

Respondent's counsel immediately objected to the question on the ground that it called for the revelation of a privileged communication. The court sustained the objection. Appellant then called his other witnesses and they gave testimony substantiating the facts concerning the execution of the deeds as we have heretofore stated them.

With this understanding of the factual situation, we approach the question to be here decided.

■ The privilege with respect to disclosures of communications between attorney and client is the oldest of the privileges protecting confidential communications and traces its origin, or at least its early growth, to the period of Queen Elizabeth's reign. In this country, the principle has, in many jurisdictions, been embodied in statutes. In this state, the general subject of privilege against the examina-

tion of witnesses is covered by Rem. Rev. Stat., § 1214 [P. C. § 7725], which, so far as is pertinent here, provides:

"The following persons shall not be examined as witnesses:—

"2. An attorney or counselor shall not, without the consent of his client, be examined as to any communication made by the client to him, or his advice given thereon in the course of professional employment."

■ The rule is well-nigh universal that the privilege against examination of a witness upon matters of confidential communication is personal to the client, patient, or other person to whom the privilege is extended. 70 C. J. 456, Witnesses, § 619. Such is the rule in this state. *McCarthy v. McCarthy,* 116 Wash. 360, 199 Pac. 733; *Williamson v. Williamson,* 183 Wash. 71, 48 P. (2d) 588; *State v. McGinty,* 14 Wn. (2d) 71, 126 P. (2d) 1086.

■ Moreover, the privilege does not terminate with the cessation of the protected relationship, but continues thereafter, even after the death of the person to whom the privilege is accorded, and may be invoked by his personal representative or his heir. 70 C. J. 456, *et seq.,* Witnesses, § 619; 8 Wigmore, Evidence (3d ed.) pp. 627, 660, 830, §§ 2323, 2341, 2387.

■ Intimately linked with the question of the right to assert the privilege is the question of the right to waive it. It is universally conceded that the privilege may be waived by the person in whose favor it exists, and it is almost as well-settled that it may be waived by the personal representative or the heir of the deceased person, particularly where the disclosure would not injuriously affect the character or reputation of the decedent. The subject of waiver was fully considered by this court in *In re Thomas' Estate,* 165 Wash. 42, 4 P. (2d) 837, where, after discussing many authorities and referring to others, the opinion held that the personal representative of the deceased, that is, the administrator, executor, or heir, may effectively waive the privilege accorded by the statute.

It is to be borne in mind that, in the case at bar, the action was initiated by Mr. Martin, the executor; that he was an

attorney at law and as such had been employed by Mrs. Shaen, in her lifetime, with respect to the very matter here involved; that he was the principal witness in behalf of himself as plaintiff and of the estate; and that, having testified on direct examination, he, personally and through the attorney representing him, invoked the privilege against divulging an asserted privileged communication.

Unquestionably, under the rules stated above, Mr. Martin had the right to claim the privilege if the fundamental conditions necessary to the establishment of a privileged communication existed. It is equally true, however, that as plaintiff seeking the particular relief in the action, and as executor of the estate of the decedent, he also had the right and power to waive the privilege.

The matter then narrows itself to the question whether or not, under the facts and circumstances shown above, he did, in fact and law, waive a privilege which he otherwise might have preserved.

To establish a case for the executor plaintiff in this action, it was necessary for him to show that Mr. Shaen had made delivery of the quitclaim deed to Mrs. Shaen. Until so delivered, that deed conveyed nothing to her, for it is essential to the validity of a deed that there be a delivery of the instrument. *Nichols v. McDougal*, 175 Wash. 536, 27 P. (2d) 699.

There was no direct evidence that Mr. Shaen had ever delivered the deed to his wife. So far as he knew, up to the time of Mrs. Shaen's death, it remained in the safe-deposit box where he himself had placed it. For proof of delivery, respondent relied entirely upon the presumption arising from the fact of possession of the deed by Mrs. Shaen prior to the time she gave it to Mr. Martin to be filed for record. To support his contention in that respect, respondent, in his brief, quotes from, and relies upon, the following statement taken from 18 C. J. 418, Deeds, § 496:

"Where a grantee is in possession of a deed which has been duly executed, the presumption arises that it has been duly delivered, and the burden of proof rests upon the

party disputing the presumption, the presumption being disputable and not conclusive."

We have no criticism of that statement of the law. It is clear from both the pleadings and the record, however, that Mr. Shaen was strenuously contending that there had never been any delivery of the deed to Mrs. Shaen.

To account for the manner in which he as attorney, now the executor, got possession of the deed and thereafter filed it for record, Mr. Martin testified that he received the instrument from Mrs. Shaen. Thus the presumption of delivery came into being. Necessarily, the circumstances under which Mrs. Shaen got possession of the deed constituted a vital factor with respect to the question whether there had been a legal delivery of the instrument to her, for if she merely abstracted it from the safe-deposit box without the knowledge or consent of Mr. Shaen, there was neither delivery nor an effective presumption of delivery to her.

Having testified to a specific fact for the sole purpose of creating the presumption vital to the establishment of his case, the attorney executor could not, by invoking the principle of privileged communication, prevent an inquiry into the circumstances surrounding the fact concerning which he had testified. He could not be permitted to disclose so much of the transaction as he saw fit and then withhold the remainder. As stated in 8 Wigmore, Evidence (3d ed.) 633, § 2327:

"The client's offer of his own or the attorney's testimony as to a *part of any communication* to the attorney is a waiver as to the whole of that communication."

When Mr. Martin, the executor representing the estate of the decedent, voluntarily took the stand and testified upon a vital issue in the case, he waived the privilege of withholding his testimony as to all matters relevant to that issue and opened the door for inquiry into that particular subject matter.

It is possible that had Mr. Martin been required to answer the questions propounded to him with respect to the circumstances under which he came into possession of the

514

quitclaim deed, it might have developed that no legal delivery of it to Mrs. Shaen had ever been made. In any event, appellant was entitled, under the circumstances, to elicit the facts. This he was not permitted to do, and in making that ruling we think the trial court committed error.

The other questions involved in the case cannot be determined until all the competent evidence respecting the question now under discussion is adduced. For that reason we express no opinion on those questions.

The judgment is reversed, with direction to the trial court to grant a new trial and proceed further in accordance with the views herein expressed.

BEALS, C. J., MILLARD, JEFFERS, and GRADY, JJ., concur.

[1]Reported in 156 P. (2d) 676.