[No. 30002. Department One. November 7, 1946.]

GEORGE M. MARTIN, *as Executor, Respondent,* v.
JOHN SHAEN, *Appellant.*[1]

*I. J. Bounds,* for appellant.

*Sydney Livesey* and *William B. Holst,* for respondent.

MILLARD, C. J.—Plaintiff, as executor of the will and estate of Martha J. Shaen, who died October 1, 1943, at the age of eighty years, instituted an action against John Shaen, surviving husband of the testatrix, who was twenty-four years

[1] Reported in 173 P. (2d) 968.

her husband's senior, to recover from the defendant the possession of certain real property alleged to have been the sole and separate property of Mrs. Shaen at the time of her death. The defense to the action was that the property was defendant's sole and separate property by virtue of a deed from the decedent. Trial of the cause to the court without a jury resulted in judgment in favor of plaintiff. Defendant appealed.

We reversed the judgment, with direction to the trial court to grant a new trial, on the ground that the privilege against disclosure of communications between attorney and client was waived as to the whole of the communication by the offer of the client (plaintiff Martin, who was attorney for decedent at the time of the transaction in question) of his testimony as to a part of it. *Martin v. Shaen*, 22 Wn. (2d) 505, 156 P. (2d) 681.

The cause is now before us on appeal of defendant from judgment in favor of plaintiff executor in second trial to the court without a jury to determine the same question, title to certain real property.

Appellant, John Shaen, and decedent, Martha J. Shaen, intermarried December 30, 1927, at which time the husband was forty or forty-one years old and the wife sixty-five years old. They lived together as husband and wife until May, 1943, which was about five months prior to the death of Mrs. Shaen. In 1937, one of the spouses purchased under contract the real property which is the subject matter of this controversy. All the payments for this property were out of appellant's personal earnings. A house was erected on this tract of land, and after its construction until shortly before the death of Mrs. Shaen, whose affection for her husband had cooled because of some marital difficulty, the parties occupied the property as their home.

May 24, 1938, Martha J. Shaen and John Shaen, accompanied by two friends, Joseph D. Evans and his wife, Eva Evans, who served as witnesses to the written transactions on that occasion, consulted Mr. E. A. Ferris, an attorney at law in Yakima. Mr. Ferris acted as attorney for both parties, and at their mutual request prepared certain in-

struments, one of which was a "statutory Quit Claim Deed" from Mr. Shaen to Mrs. Shaen, which conveyed and quitclaimed to Mrs. Shaen the real estate in controversy. This deed was signed by Mr. and Mrs. Evans as witnesses. Mr. Shaen retained the deed executed by him. Mrs. Shaen handed to Mr. Shaen the deed she had executed in his favor. When the meeting ended, Mr. Shaen took both deeds and, accompanied by Mr. Evans, went to a bank, where he placed the instruments in a safe-deposit box. The deed from Mrs. Shaen to Mr. Shaen was withdrawn by the latter from the safe-deposit box and placed of record in 1940. With reference to the quitclaim deed to his wife, Mr. Shaen testified that, so far as he knew, it was never taken out of the safe-deposit box.

In the spring of 1943, Mr. and Mrs. Shaen's marital difficulties culminated in a criminal action against the husband. That cause was conducted by Mr. George M. Martin, a deputy prosecuting attorney, who is now the executor and plaintiff respondent in the case at bar. Mrs. Shaen then left the family home permanently and resided, until her death, with two of her children by a former marriage.

While conducting the criminal action, Mr. Martin was retained by Mrs. Shaen to draw a will for her and to record the quitclaim deed by which Mr. Shaen had conveyed the property in question to Mrs. Shaen. The deed bears an indorsement that it was filed for record April 13, 1943, at the request of Mr. Martin.

Mrs. Shaen died October 1, 1943. By will executed April 13, 1943, she left five dollars to each of her eight children by her former marriage, and the remainder of her estate to a daughter-in-law. Mr. Martin, who drew the will, was named therein as executor.

Immediately prior to going to Mr. Martin's office April 13, 1943, Mrs. Shaen and her daughter, Lola B. King, went to a bank, where they obtained a safe-deposit box which they took to Mr. Martin's office. From that box, certain articles, among them the quitclaim deed in controversy, were withdrawn. Mr. Martin testified that Mrs. Shaen handed to him the quitclaim deed with request that he

have same recorded. He denied that he took anything out of the box.

Mrs. King testified that Mr. Martin opened the box and withdrew the articles therefrom. She testified that she did not see her mother have any paper in her hand taken from that box or any place else during that day. There is no evidence that decedent ever had access to safe-deposit box of appellant or that she and he ever had such box in common; hence, the only logical inference is that the daughter and mother obtained from the bank a box rented solely to Mrs. Shaen, from which box the quitclaim deed was withdrawn in Mr. Martin's office, as stated above. The only evidence was that of Mrs. King and Mr. Martin. We are bound by the trial court's acceptance as true of the story of Mr. Martin.

■ Until delivered to her, the quitclaim deed conveyed nothing to Mrs. Shaen, "for it is essential to the validity of a deed that there be a delivery of the instrument." *Martin v. Shaen,* 22 Wn. (2d) 505, 156 P. (2d) 681.

■ There is not any direct evidence that Mr. Shaen ever delivered the deed to his wife. Respondent relied in the trial of the cause upon the presumption of delivery from the fact of possession of the deed by Mrs. Shaen prior to the time she gave it to Mr. Martin to be filed for record. We are in accord with the rule that:

"Where a grantee is in possession of a deed which has been duly executed, the presumption arises that it has been duly delivered, and the burden of proof rests upon the party disputing the presumption, the presumption being disputable and not conclusive." 18 C. J. 418, Deeds, § 496.

In the first trial of this cause, Mr. Shaen contended that there had never been any delivery of the deed to Mrs. Shaen. The presumption of delivery came into being when Mr. Martin testified that he received the deed from Mrs. Shaen and thereafter had it placed of record. The circumstances under which Mrs. Shaen obtained possession of the deed constituted, as we said in *Martin v. Shaen, supra,*

". . . a vital factor with respect to the question whether there had been a legal delivery of the instrument

to her, for if she merely abstracted it from the safe-deposit box without the knowledge or consent of Mr. Shaen, there was neither delivery nor an effective presumption of delivery to her."

We sent the cause back for trial on the ground that:

"Having testified to a specific fact for the sole purpose of creating the presumption vital to the establishment of his case, the attorney executor could not, by invoking the principle of privileged communication, prevent an inquiry into the circumstances surrounding the fact concerning which he had testified. He could not be permitted to disclose so much of the transaction as he saw fit and then withhold the remainder."

The cause is now before us on appeal from judgment in the second trial, in which the attorney executor gave testimony which was excluded at the first trial, which testimony the trial court accepted as true and from which no reasonable inference may be drawn that Mrs. Shaen abstracted the deed from the safe-deposit box without the knowledge or consent of Mr. Shaen.

Mrs. Shaen had possession of the deed when she went to the office of respondent April 13, 1943. Upon the issue whether Mrs. Shaen handed the deed to Mr. Martin with request that he file same of record, was the testimony of Mrs. King, who merely stated that she never saw any paper in the hand of her mother while in Mr. Martin's office. That evidence was negative in character and did not constitute substantial evidence within the rule requiring that a finding or verdict must be supported by a preponderance of the evidence. Opposed to her testimony was positive affirmative evidence that Mrs. Shaen had possession of the deed and that she delivered same to Mr. Martin with request that he file it. That testimony was accepted as true by the trial court.

In view of definite testimony that the deed was in possession of Mrs. Shaen and that she delivered same to her attorney with direction that he file same, and in view of the absence of substantial evidence to the contrary, we must hold that the trial court's finding on the issue was

properly made. *Hauswirth v. Pom-Arleau,* 11 Wn. (2d) 354, 119 P. (2d) 674.

■ Appellant testified that, following the execution of the quitclaim deed in controversy May 24, 1938, he placed the deed in his pocket and went with a friend to a bank, rented a safe-deposit box, and put the deed therein. The trial court, on respondent's objection, would not permit appellant to testify that he did not deliver the quitclaim deed to his wife. Neither would the trial court permit appellant to testify that he had not withdrawn the deed from the safe-deposit box, that he did not know that the deed had been withdrawn from the safe-deposit box, nor that he did not see the deed again until the time of the first trial. Appellant's offer of proof that he never delivered the deed to his late wife, the decedent, nor to his knowledge did she ever have possession of the deed, was rejected on the ground that appellant, being a party in interest, would not be permitted under the provisions of Rem. Rev. Stat., § 1211 [P.P.C. § 38-3] to testify in his own behalf as to any transaction had by him with the decedent. The statute reads as follows:

"No person offered as a witness shall be excluded from giving evidence by reason of his interest in the event of the action, as a party thereto or otherwise, but such interest may be shown to affect his credibility: Provided, however, that in an action or proceeding where the adverse party sues or defends as executor, administrator or legal representative of any deceased person, or as deriving right or title by, through or from any deceased person, or as the guardian or conservator of the estate of any insane person, or of any minor under the age of fourteen (14) years, then a party in interest or to the record, shall not be admitted to testify in his own behalf as to any transaction had by him with, or any statement made to him, or in his presence, by any such deceased or insane person, or by any such minor under the age of fourteen (14) years: Provided further, that this exclusion shall not apply to parties of record who sue or defend in a representative or fiduciary capacity, and have no other or further interest in the action."

The prohibition of the statute against the evidence of an adverse party as to transactions had with a person deceased, does not exclude evidence as to who was or was not present at the time of the transaction. However, when it appears that there was a personal transaction by the interested party with the deceased and that the testimony offered tends to show either what did take place between the parties or what did not, it must be excluded by force of the statute so long as it concerns the transaction or justifies an inference as to what it really was. As stated in *Boyd v. Boyd,* 164 N. Y. 234, 58 N. E. 118,

"The statute may be as effectually violated by testimony of a negative character as by affirmative proof of what actually took place."

In the case cited, one of the parties testified that he never signed the name of the deceased to the paper in controversy, which, the court observed, illustrated the manner in which the statute might be evaded by the ingenuity of counsel. In that cause, if the plaintiff's theory of the case was the true one, there never was any personal transaction with the deceased, since it was alleged that the deceased never executed or delivered the paper and that it was a spurious instrument. On the other hand, the defendants insisted that it was the genuine act of the deceased and that he signed and delivered it at the date specified. The court said:

"Hence, upon the defendants' theory there was a personal transaction, which consisted in the execution and delivery to the wife of the witness, under whom he claimed title, of a written assignment of the certificate of redemption. The witness gave testimony to prove that transaction. If it did not prove or tend to prove it, then it was not admissible at all. But when he swore that he never signed the paper his testimony tended to prove that the deceased did, since there was no claim that any one else had anything to do with the transaction. His testimony, under the circumstances, had nearly the same probative value as if he had sworn, as the other witnesses did, that he was actually present at the time and saw the deceased affix his signature to the instrument. The testimony, therefore, was concerning a personal transaction with the deceased, since it

was an attempt to prove it by negative instead of affirmative testimony. If the witness was not competent to prove what took place at that transaction by direct or affirmative testimony he was not competent to prove it by indirect or negative testimony. (*Clift v. Moses, infra; Walsh v. McArdle,* 78 Hun, 411.) His wife swore, and it was admitted, that he was present when the paper was signed by the deceased as a genuine instrument. Hence, if it be true that such a transaction ever took place, the witness participated in it and could not testify concerning it either affirmatively or negatively."

See, also, *O'Connor v. Slatter,* 48 Wash. 493, 93 Pac. 1078.

In *Van Wagenen v. Bonnot,* 74 N. J. Eq. 843, 70 Atl. 143, under a statute similar to ours the court refused to permit testimony to be given by a party to the action as to any transaction with or statements by the deceased. In that case, the court refused to permit the surviving party to a transaction consisting of a *donatio causa mortis,* to testify that a closed parcel, then delivered, remained in *statu quo* until after donor's death and as to its contents when opened, because such testimony would establish by necessary inference its contents at the time of delivery, and on that point the deceased, if living, could contradict the survivor.

The rule is well settled that, under statutes like Rem. Rev. Stat., § 1211, an adversely interested party cannot testify indirectly to that to which he is prohibited from testifying directly, and thereby create an inference as to what did or did not transpire between himself and the deceased person.

The burden is upon one claiming that a deed in possession of the grantee was never delivered, to prove the fact; that burden, appellant did not sustain.

The judgment is affirmed.

ROBINSON, SIMPSON, and JEFFERS, JJ., concur.

SCHWELLENBACH, J. (dissenting)—The appellant testified that, after he put the quitclaim deed in question in the trust box, he never saw the deed again until it was brought to court and offered in evidence at the former trial. This was objected to on the ground that it violated Rem. Rev.

Stat., § 1211, and the objection was sustained. It did not constitute evidence of a transaction with a deceased person and should have been admitted.

Furthermore, the testimony showed that the property was originally acquired by the community. It then became community property. At the time that Mr. and Mrs. Shaen went to the office of Mr. Ferris, the husband executed a deed to the wife and the wife executed a deed to the husband. Possession of both deeds was then taken by the husband. This transaction did not change the status of the property. It remained community property. It is still community property, and Mrs. Shaen's estate is now the owner of only her community interest therein. I dissent.