186 N.J. Super. 218 (1982)
452 A.2d 213
EMIL F. AYSSEH, TRUSTEE, PLAINTIFF,
v.
HOWARD M. LAWN, PEARL B. LAWN, PM PARKING FIRST, INC. AND STEVEN J. WINICK, DEFENDANTS,
v.
EMIL F. AYSSEH, INDIVIDUALLY, CHARLES E. AYSSEH AND ALFRED AYSSEH, THIRD-PARTY DEFENDANTS.
Superior Court of New Jersey, Chancery Division Burlington County.
Decided July 5, 1982.
*220 Julius B. Poppinga for plaintiff and third-party defendants (McCarter and English, attorneys).
Adrian M. Foley, Jr., Edward B. Deutsch and Thomas S. Cosma, attorneys for defendants (Connell, Foley and Geiser, attorneys).
HAINES, A.J.S.C.
This was a contested mortgage foreclosure action. Defendants Lawn, among numerous contentions, argued that the terms of plaintiff's note and mortgage were modified by a separate written agreement. They offered parol evidence to explain its terms. Plaintiff denied any modification and, in any event, argued that testimony concerning the separate agreement was barred by the parol evidence rule. The court disagreed, holding that the various documents forming the separate agreement were unclear so that interpretation was necessary, requiring the admission of the offered evidence for that purpose.
The Lawns then called Peter M. Rosenblum, a member of the law firm of Foley, Hoag & Eliot of Boston, Massachusetts, as a witness. Rosenblum and his firm had represented Lawn and Park Mobile, Inc., of which Lawn was the executive director and principal shareholder. Plaintiff and others, including three foreign corporations, also owned substantial interests in Park Mobile. That corporation was not made a party to this action. Rosenblum, acting for both clients, had drafted the "modification" agreement and related documents, and had also participated in extensive negotiations with plaintiff, his attorneys (not trial counsel) and others, relating to the complex financial affairs of Park Mobile. He was offered as a witness with the understanding that his testimony would be limited to the identification of the documents and to statements made by other persons, including Aysseh and his attorneys during the negotiations.
*221 When plaintiff deposed Rosenblum before trial, the attorney-client privilege was interposed, denying answers to numerous significant and relevant questions. Plaintiff then demanded to know whether Rosenblum would be called as a witness at the trial. He warned defendant that, if he was, the court would be requested to bar his testimony on the ground that (1) his production as a defense witness, as well as his anticipated testimony, would constitute a waiver of the attorney-client privilege; that (2) the waiver should have been made at the time of the deposition and that (3) the failure to do so denied the right to adequate discovery and necessary trial preparation. Plaintiff's demand was ignored. Rosenblum was then produced at trial, and plaintiff, as promised, moved to bar his testimony entirely. The motion was granted. This opinion, submitted after that ruling, is written by reason of the novel and important questions involved.

A. The Attorney-Client Privilege and Its Waiver

The attorney-client privilege is set forth in N.J.S.A. 2A:84A-20, Evid.R. 26;
(1) General rule. Subject to Rule 37 and except as otherwise provided by paragraph 2 of this rule communications between lawyer and his client in the course of that relationship and in professional confidence, are privileged, and a client has a privilege (a) to refuse to disclose any such communication, and (b) to prevent his lawyer from disclosing it, and (c) to prevent any other witness from disclosing such communication if it came to the knowledge of such witness (i) in the course of its transmittal between the client and the lawyer, or (ii) in a manner not reasonably to be anticipated, or (iii) as a result of a breach of the lawyer-client relationship, or (iv) in the course of a recognized confidential or privileged communication between the client and such witness. The privilege shall be claimed by the lawyer unless otherwise instructed by the client or his representative; the privilege may be claimed by the client in person, or if incompetent or deceased, by his guardian or personal representative. Where a corporation or association is the client having the privilege and it has been dissolved, the privilege may be claimed by its successors, assigns or trustees in dissolution.
(2) Exceptions. Such privilege shall not extend (a) to a communication in the course of legal service sought or obtained in aid of the commission of a crime or a fraud, or (b) to a communication relevant to an issue between parties all of whom claim through the client, regardless of whether the respective claims are *222 by testate or intestate succession or by inter vivos transaction, or (c) to a communication relevant to an issue of breach of duty by the lawyer to his client, or by the client to his lawyer. Where 2 or more persons have employed a lawyer to act for them in common, none of them can assert such privilege as against the others as to communications with respect to that matter.
(3) Definitions. As used in this rule (a) "client" means a person or corporation or other association that, directly or through an authorized representative, consults a lawyer or the lawyer's representative for the purpose of retaining the lawyer or securing legal service or advice from him in his professional capacity; and includes an incompetent whose guardian so consults the lawyer or the lawyer's representative in behalf of the incompetent, (b) "lawyer" means a person authorized, or reasonably believed by the client to be authorized to practice law in any State or nation the law of which recognizes a privilege against disclosure of confidential communications between client and lawyer. A communication made in the course of relationship between lawyer and client shall be presumed to have been made in professional confidence unless knowingly made within the hearing of some person whose presence nullified the privilege.
The privilege provides a necessary protection to the attorney-client relationship, preventing unauthorized disclosure of confidential communications. It is described in State v. Kociolek, 23 N.J. 400 (1957):
The attorney-client privilege is basic to a relation of trust and confidence that, though not given express constitutional security, is yet essentially interrelated with the specific constitutional guaranties of the individual's right to counsel and immunity from self-incrimination, the oldest of the privileges for confidential communications, going back to the reign of Elizabeth where it stood unquestioned, "as a natural exception to the then novel right of testimonial compulsion." Wigmore on Evidence (3d Ed. 1940) § 2190. [at 415]
As Evid.R. 26 indicates, the privilege does not extend to communications between client and attorney made in the presence of a third person. Roper v. State, 58 N.J.L. 420 (Sup.Ct. 1896); Gulick v. Gulick, 39 N.J. Eq. 516 (E. & A. 1885); 8 Wigmore, Evidence (McNaughton rev. 1961), § 2311 at 599-603. The rule is explained in Carr v. Weld, 19 N.J. Eq. 319 (Ch. 1869):
An attorney would be obliged to disclose any agreement made between the parties in his presence. Such agreements are not communications made by him to his client, but facts that occur in his presence; they are not secret or to be concealed from the opposite party, and from that fact are necessarily within his knowledge. They are not within the terms or reason of the rule that prohibits counsel or attorneys from disclosing communications made to them by clients. [at 320]
*223 The privilege may be waived, but only by the client; absent waiver, the attorney, when called as a witness, must assert the privilege. In re Selser, 15 N.J. 393, 404 (1954). Evid.R. 37 provides:
A person waives his right or privilege to refuse to disclose or prevent another from disclosing a specified matter if he or any other person while the holder thereof has (a) contracted with anyone not to claim the right or privilege or, (b) without coercion and with knowledge of his right or privilege, made disclosure of any part of the privileged matter or consented to such a disclosure made by anyone.
A disclosure which is itself privileged or otherwise protected by the common law, statutes or rules of court of this State, or by lawful contract, shall not constitute a waiver under this section. The failure of a witness to claim a right or privilege with respect to one question shall not operate as a waiver with respect to any other question.
It is clear from this rule that a party who uses his attorney as a witness thereby waives the privilege, at least as to confidential transactions covered by the testimony. See, also, Sicpa North America v. Donaldson, 179 N.J. Super. 56, 61-62 (Law Div. 1981); 8 Wigmore, op. cit., § 2327; McCormick, Evidence (2 ed. 1972), § 94 at 195.
Plaintiff claimed that the mere presentation of an attorney as a witness for his client waived the privilege entirely. He relied upon the following from Wigmore, op. cit.:
The client's offer of the attorney's testimony in the cause at large is not a waiver so far as the attorney's knowledge has been acquired casually as an ordinary witness. But otherwise it is a waiver for, considering that the attorney ought in general not to be used as a witness, the client ought to be discouraged from utilizing his attorney in double and inconsistent capacities, and if he has seen fit to furnish him knowledge as a witness, he should deny himself the right to invoke the attorney's function as an advisor. [emphasis supplied]
He suggested that McCormick, op. cit., agrees in the following statement:
How far does the client waive by calling the attorney as a witness? If the client elicits testimony from the lawyer-witness as to privileged communications this obviously would waive as to all consultations relating to the same subject, just as the client's own testimony would. It would seem also that by calling the lawyer as a witness he opens the door for the adversary to impeach him by showing his interest. And it seems reasonable to contend as Wigmore does that if the client uses the lawyer to prove matter which he would only have learned in the course of his employment this again should be considered a waiver as to *224 related privileged communications. But merely to call the lawyer to testify to facts known by him apart from his employment should not be deemed a waiver of the privilege. That would attach too harsh a condition on the exercise of the privilege. [at 195]
Also cited in support of the proposition were Sicpa v. Donaldson, supra; State v. Kociolek, supra 23 N.J. at 416, 417; Beckette v. State, 31 Md. App. 85, 355 A.2d 515, 521 (Ct.Sp.App. 1976); Singleton v. State, 90 Nev. 216, 522 P.2d 1221 (Sup.Ct. 1974); Hayes v. Ricard, 244 N.C. 313, 93 S.E.2d 540 (Sup.Ct. 1956); Martin v. Shaen, 22 Wash.2d 505, 156 P.2d 681, 685 (Sup.Ct. 1945), and Kammerer v. Western Gear Corp., 96 Wash.2d 416, 635 P.2d 708 (Sup.Ct. 1981).
The court was first persuaded that plaintiff was right. The proposed testimony of Rosenblum would go to the heart of the dispute: modification of plaintiff's note and mortgage by separate agreement. Rosenblum, who prepared some of the documents and conducted negotiations concerning them, if shielded by the attorney-client privilege, would be exposed to very little cross-examination. His client's intent, the crucial evidence to be considered in the interpretation of the documents in question, could never be explored. Only surface areas, e.g., whether in fact a statement was made, could be explored. The documents prepared by Rosenblum, though only to be identified by him, obviously reflected instructions from his client. Statements of third persons must have been made, at least in part, in response to statements of Rosenblum which were authorized by his client. Everything Rosenblum could say would lead to his client's instructions, to most important evidence of intent. Consequently, if the trail to the client could not be pursued, cross-examination would be restricted unacceptably. The court therefore held that the mere production of the attorney as a defense witness waived the attorney-client privilege. The necessary corollary to this conclusion was that the privilege should have been waived at the time of Rosenblum's deposition; that the failure to do so unfairly thwarted plaintiff's discovery efforts, and that the proper sanction was the barring of all testimony of the attorney. The court so ruled.
*225 On application for a rehearing, adequately briefed, the court reversed. Neither Wigmore nor McCormick needed to be read so strictly. The court's anticipation of Rosenblum's testimony was speculative. The cases cited by plaintiff dealt with testimony as to specific transactions, resulting in waivers as to them only. It was clear that no waiver need occur when an attorney testifies to matters which are not privileged. Baltimore Transit Co. v. Mezzanotti, 227 Md. 8, 174 A.2d 768 (Ct.App. 1961), explains:
The privilege only extends to information derived from his client, as such ... Information derived from other persons, or other sources, although such information is derived or obtained by acting as attorney or counsel is not privileged ... But the principle of the rule does not apply to discovery of facts within the knowledge of the attorney or counsel which were not communicated or confided to him by his client; although he became acquainted with such facts while engaged in his professional duty as the attorney or counsel of his client. [174 A.2d at 773]
Under the rule for which plaintiff contended, testimony as to nonprivileged matters would be prevented unless the client were willing to waive the privilege entirely. The correct rule was set forth in Drayton v. Industrial Life, 205 S.C. 98, 31 S.E.2d 148 (Sup.Ct. 1944), where the problem was addressed precisely:
A client may call his attorney to the stand and waive privileged communications between them by questioning him concerning such communications, and the attorney may then be cross-examined concerning the communications in question. Such waiver, however, extends no farther than the subject matter concerning which the attorney has been interrogated. And if he has not been examined as to matters of privilege between him and his client, there is, of course, no waiver thereof. [31 S.E.2d at 153-154]
The limits of waiver could therefore be determined only by putting the attorney on the stand, an action which would not invite any waiver unless privileged communications were revealed by his testimony.
Rosenblum then testified. He established his simultaneous attorney-client relationship with Park Mobile and Lawn. Defense counsel then made a proffer of the further matters to which Rosenblum was expected to testify. This disclosed that Rosenblum would identify the documents which he prepared. Notes made by him during financial negotiations with plaintiff *226 and his counsel, as well as others, would be used to refresh his memory. These negotiations concerned plaintiff's note and mortgage, among other things. Further testimony by Rosenblum was then prohibited. That ruling was based upon the analysis which follows.

B. The Conflict of Interest; Its Effect

Rosenblum and his firm represented Howard M. Lawn and Park Mobile, Inc. Lawn was the principal executive officer of the corporation, its major shareholder and a substantial creditor. Aysseh and others were also shareholders. The obligation of Park Mobile, through its board of directors, was to represent all of its shareholders fairly. Judson v. Peoples Bank & Trust Co., 25 N.J. 17, 28 (1957). The negotiations in which Rosenblum participated, as well as the documents which he would identify and had prepared, involved conflicting interests of Lawn, Aysseh and the shareholders of Park Mobile. Stock transfers were under consideration, as well as loans to the corporation by both Aysseh and Lawn. The amounts involved were substantial. The note and mortgage, for example, were for 1.6 million dollars.
DR5-105 (in force in New Jersey and Massachusetts) provides:
........
(C) ... a lawyer may represent multiple clients if he believes that he can adequately represent the interests of each and if each consents to the representation after full disclosure of the facts and of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each.
(D) If a lawyer is required to decline employment or to withdraw from employment under DR5-105, no partner or associate of his or his firm may accept or continue such employment.
Our courts interpret these rules strictly. Haynes v. First Nat'l St. Bank, 87 N.J. 163, 181 (1981). Here, the "full disclosure" required by DR5-105 was not possible; the problems were too complex and the consequences too speculative. Aside from this, the defense, which had the burden, presented no evidence of consent to the representation by the adverse parties. Rosenblum's *227 representation of Lawn and Park Mobile was therefore adverse and impermissible. As a consequence, no attorney-client relationship, a necessary foundation for the privilege, could arise.[1]
The dual representation, even if permissible, denied any possibility of an attorney-client privilege. Whatever Rosenblum and his firm did for Lawn, they did for the corporation. Every document prepared and every negotiation undertaken for either client involved both. The corporation, of course, was a creature of law which could not appear in the Foley offices in person. It appeared through its representative, Lawn, its executive officer and principal shareholder. Thus, when Lawn consulted his attorneys, Park Mobile was present. Every communication to Lawn was a communication to the corporation. Professional ethics as well as factual circumstances dictated this conclusion. Rosenblum and his firm could not discuss Ayssah-Lawn matters with Lawn without disclosing the discussion to the corporation. The corporation was a client, directly involved. The multiple representation rule, as well as common sense, required disclosure. The attorney-client privilege, therefore, was never available to Lawn because
(1) Park Mobile, which is not a party to this action, was a third-party participant in all Lawn-Rosenblum transactions. This eliminates the privilege. Roper v. State, supra.

(2) Under Evid.R. 26, communications are privileged only when made "in professional confidence." That "confidence" is not possible when the representation involves adverse parties.[2]

*228 (3) No attorney-client relationship ever arose. Rosenblum, if permitted to testify, would therefore have been subjected to full cross-examination.
(1) The Position of Park Mobile, Inc., if Rosenblum testified.
The testimony of Rosenblum would have involved Park Mobile, a nonparty, which had never waived the attorney-client privilege. It could be prejudiced by the testimony. Its participation in the unethical arrangement was not shown to have been knowingly approved by all of its shareholders, some of whom had no direct involvement in the transactions. Under the circumstances, it would be unfair for these nonconsenting shareholders to be affected by the testimony of an attorney, supposedly representing their interests when representing their corporation. The fact that no attorney-client relationship existed, for the reasons stated above, is not controlling. Shareholders who did not consent to the representation could not be prejudiced by the improper arrangement. The testimony of Rosenblum, therefore, was to be considered insofar as it affected the interests of Lawn; it was not to be considered for any purpose as it might affect the interests of Park Mobile, in this or any other litigation.

C. The Rosenblum Testimony: A Waiver of the Privilege.

Even without the conflict of interest problem, the attorney-client privilege would have been waived by Rosenblum's testimony. Rosenblum testified to his representation of Lawn and Park Mobile. He was prepared to testify that he drafted various documents (including some relied on by Lawn) for them, which were to be identified and offered in evidence through him; that he negotiated on their behalf and that he heard various statements of Aysseh and his attorney concerning disputed matters. He had notes available with which to refresh his memory as to these statements. It was represented that he had no recollection of anything else; that he would not, for example, testify to any comments of his which provoked or responded to the statements of others. The documents prepared by him had *229 been delivered to opposing counsel; the statements were made by the opposing party and his counsel. They would not be privileged. Roper v. State, supra. It was therefore argued that Rosenblum's testimony concerning these matters would not waive the attorney-client privilege. The court held otherwise.
When an attorney negotiates on behalf of a client, he necessarily represents the client's interest and intent. Even if Rosenblum testified only to statements made by others in the course of those negotiations, the statements would have been made in response to negotiating positions he maintained and documents he prepared. The statements were not made in a vacuum; they were part of the give and take between adversaries and would have to be interpreted with the approaches of both sides in mind. The position taken by Rosenblum implicitly reflected his clients' instructions. The documents, drafted at his clients' direction, had to reveal his clients' intentions; they led directly to Lawn. As a witness, Rosenblum would be a conduit for the confidential communications of his client; the very purpose of his representation was to further Lawn's interpretation of the alleged modifying documents. His testimony, therefore, would constitute a waiver of the privilege.
Martin v. Shaen, 22 Wash.2d 505, 156 P.2d 681 (Sup.Ct. 1945), reinforces this conclusion. The court there held:
Having testified to a specific fact for the sole purpose of creating the presumption vital to the establishment of his case, the attorney executor could not, by invoking the principle of privileged communication, prevent an inquiry into the circumstances surrounding the fact concerning which he had testified. He could not be permitted to disclose so much of the transaction as he saw fit and then withhold the remainder. As stated in 8 Wigmore, Evidence, 3d Ed. 633, § 2327:
"The client's offer of his own or the attorney's testimony as to a part of any communication to the attorney is a waiver as to the whole of that communication. * * *"
When Mr. Martin, the executor representing the estate of the decedent, voluntarily took the stand and testified upon a vital issue in the case, he waived the privilege of withholding his testimony as to all matters relevant to that issue and opened the door for inquiry into that particular subject matter.
McCormick, Evidence, quoted above, also suggests that a waiver of the privilege must occur in these circumstances:

*230 ... it seems reasonable to contend, as Wigmore does, that if the client uses the lawyer to prove matter which he would only have learned in the course of his employment, this again should be considered a waiver as to related privileged communications.
Rosenblum's proposed testimony, his negotiations, the statements of others and the provisions in the documents he prepared, all reflected "matter which he would only have learned in the course of his employment," and therefore waived the privilege as to "related privileged communications." Nonprivileged statements, such as those made by Ayssah to Rosenblum, are normally nonprivileged. However, when they are placed in the setting of the negotiations conducted here, they are so inextricably connected to privileged communications that the latter cannot be shielded by the exclusionary rule.
Evid.R. 4 was not considered by the court in its oral ruling, but it offers an additional basis for the refusal to admit the testimony. The rule permits the discretionary exclusion of evidence when "its probative value is substantially outweighed by the risk that its admission will ... create substantial danger of undue prejudice...."
The statements of Ayssah and his attorney, as recalled by Rosenblum, if allowed to stand alone and unconnected to Lawn, would tell less than half the story. They would be out of context. Rosenblum's notes, used to refresh his memory, might reflect only those statements he considered important to his clients. Remarks supporting the plaintiff's position may have been ignored. The denial of any inquiry, through cross-examination, into the client's interest and intent as expressed in directions to counsel, would have been highly prejudicial.

D. The Discovery Problem

When Rosenblum was deposed by plaintiff he asserted the attorney-client privilege in response to numerous material questions. Defense counsel was then asked whether Rosenblum would be called as a witness at the trial. Counsel was warned that, if he was, it would be claimed that the privilege would *231 thereby be waived, that it should have been waived at the time of the deposition so that matters otherwise covered by the attorney-client rule could be exposed for purposes of discovery, and that the consequent frustration of discovery would bar the testimony entirely. No response to this demand was given.[3] The conflict of interest problem was not then involved. Plaintiff's warning was repeated in a letter accompanying a brief on the subject, submitted to the court about one month before the commencement of trial. Again, no response was received from the defense. No further deposition of Rosenblum was taken.
The very situation reflected in plaintiff's warning then arose. Rosenblum was offered as a witness. He had no attorney-client privilege because of his representation of multiple clients with adverse interests. In addition, his testimony, given and proffered, constituted a waiver of the privilege as to transactions to be covered by that testimony. Defendants were obliged to decide before trial whether the privilege existed and, if it did, whether the anticipated testimony of Rosenblum would waive the privilege. Those decisions had to be made before the privilege was asserted as a bar to deposition testimony. Otherwise, the prevention of discovery through the use of the privilege risked the suppression of all testimony at trial which could have been the subject of the deposition.
A similar situation arose in Kammerer v. Western Gear Corp., supra. The case involved a contested motion for the production of documents. It was stipulated that attorneys would be called as witnesses concerning them. The trial court held that the presentation of the attorney's testimony would waive the attorney-client privilege. Production was therefore required. The Supreme Court affirmed saying,

*232 ... an attorney shall not be examined as to any communications or advice by him to his client without consent if the client ... [Our rule] provides that "Parties may obtain discovery regarding any matter, not privileged, which is relevant ..." However, offering an attorney's testimony concerning matters learned in the course of his employment waives the attorney-client privilege.... Furthermore, such a waiver cannot be delayed until the trial itself... [635 P.2d at 711]
Defendant argued that the stipulation was limited specifically to testimony about nonprivileged matters, and that the trial court had been so advised. The limitation, however, was offered too late.
The Supreme Court said:
The trial judge offered to deny the motion if Western Gear agreed not to call its attorney. Western Gear would not do so. We conclude that Western Gear's intent to call its attorneys was sufficiently definite to constitute a waiver of attorney-client privilege. [635 P.2d at 711]
Here, the decision to present Rosenblum as a witness and thereby risk a waiver of the attorney-client privilege came too late. Defendants were given a clear warning that objections would be made to the admission of Rosenblum's testimony at trial, on the ground that there had been a prejudicial frustration of discovery through the failure to waive the privilege at the time of the deposition. The fact of that prejudice is very clear. For example, the following questions, among several, were asked at the deposition:
(1) Did Mr. Lawn communicate to you [Rosenblum] that the note and mortgage were not intended to be a true note and mortgage?
(2) What were the instructions which Mr. Lawn gave to you with respect to drafting P-50? [P-50 was the stock transfer agreement, which was central to the parol evidence claims of the defendants.]
These questions went directly to the issue of intent and to the heart of the claim of modification. Defense counsel instructed Rosenblum not to answer, relying on the attorney-client privilege.
Under the circumstances, the only appropriate sanction was to bar Rosenblum as a witness. Every important aspect of his proposed testimony was affected by the failure to waive the privilege and permit full discovery.
NOTES
[1] Rosenblum and his firm were not parties to the within action. Consequently, they have had no opportunity to contest these conclusions.
[2] Since Rosenblum, as a matter of ethics, could not represent Park Mobile, and the authority of Lawn to employ him on behalf of the corporation was lacking, it may be argued that Park Mobile never became a client, thus removing the conflict problem. That argument does not wash. Realities must be acknowledged. Both Lawn and Rosenblum thought the latter represented the corporation. They did not intend, therefore, that their discussion would be confidential and the impropriety or lack of authority would not matter. Further, when an attorney enters into the representation of two parties he must discontinue his representation of both when their interests become adverse. In re Lanza, 65 N.J. 347, 351-352 (1974); DR5-105(B). Thus, if it is argued that Rosenblum did not represent the corporation because he was not permitted to do so, it must also be argued that he did not represent Lawn and there would be no attorney-client relationship.

It might also be said that the privilege should apply to everyone except Lawn and Park Mobile. Gulick v. Gulick, supra; Wigmore, op. cit., § 2312. This would not matter here. The interest of Ayssah as a shareholder of Park Mobile and that of the corporation itself were the same so, that the privilege could not be invoked by either of them against the other.
[3] Plaintiff did not file a motion to compel answers. The motion, if made, would not have helped; it appears that the privilege was properly asserted in connection with the deposition taken by the opposing party. The conflict of interest problems had not then surfaced and the attorney had not been called as a witness for the defendant.