[No. 32996. Department Two. September 1, 1955.]

WILLARD P. PALIN, as *Trustee, Respondent,* v. GENERAL CONSTRUCTION COMPANY, *Appellant.*[1]

[1]Reported in 287 P. (2d) 325.

*Ralph E. Franklin,* for appellant.

*Kennett, McCutcheon & Soderland* and *Sterbick & Sterbick,* for respondent.

Hill, J.—This is an action commenced by the respondent to recover damages for the loss of a quantity of oil (crankcase drainings) from his storage tank (55 feet in diameter and 30 feet high), located in an area acquired by King county in 1950 for an extension of the Boeing airfield runway. The respondent had until April 15, 1951, to remove the tank from the premises, and was entitled to use it and have access to it until that date.

Appellant had a contract with King county to fill the area in which the tank was located, and this it proceeded to do in January, 1951. The *modus operandi* was to build dikes enclosing the locus of the fill (and this placed the tank within the dikes) and then to dredge sand and silt from a nearby river and pump it through pipes to the area within the dikes.

To give respondent access to his tank while the fill was being made, appellant installed a two-inch pipe one hundred fifty or one hundred sixty feet in length, extending from the tank to a point beyond the dike. One end of the pipe was attached to the tank at the valve through which the crankcase oil was pumped, and the other end was accessible to respondent's tank trucks at a point outside of the dike.

The opening in the tank through which oil ultimately escaped was two or three inches in diameter and about three and one-half feet above the bottom of the tank. There is dispute as to whether only a capped pipe or nipple projected from this opening or a valve was attached to the pipe or nipple. The testimony on behalf of respondent is that a two-and-one-half or three inch valve was attached to the nipple, that crankcase oil was pumped into the tank through this valve, and that the two inch pipe extending through the dike was attached to the valve. Appellant's witnesses insist that oil was pumped into the tank through another valve, and that it was to that valve that the pipe line was connected.

The trial court believed respondent's witnesses. Its findings reflect their testimony on these controverted points and include findings that a valve controlled the outlet from the opening in question and that the valve was operated by a

wheel which was, prior to the making of the fill, secured by a chain and padlock when not in use, in such a way as to make it impossible to open the valve; that, when the fill reached the level at which it would cover this valve, the lock and chain were removed; and that the valve remained open after it was covered by the fill, as the pipe line which extended beyond the dike was attached to it. No mention is made in the findings of the fact that there were three other valves, none of them more than three inches in size, through which oil could be drawn from the tank.

The fill was completed January 24, 1951. About March 20th, appellant began to remove the dirt from around the tank, to give respondent access so that he could remove the oil and tear down the tank. The trial court found that during the morning of March 21st, appellant's bulldozer struck the valve that had been chained and locked before the fill was made, breaking it off. It is agreed that appellant's workmen stopped the escaping oil by driving a wooden plug into the pipe or nipple which still extended from the tank, and then welded a six-inch gate valve onto the tank over the plug, after which they withdrew the plug and closed the gate valve tightly, by hand. The amount of oil lost up to that time was negligible.

Appellant's crew left the premises at about five p. m. The next morning, March 22nd, before eight a. m., it was discovered that the gate valve had been opened by some unknown person during the night. Before it was reclosed by appellant's superintendent, two hundred thousand gallons of oil had escaped from the tank. The trial court found the value of the oil to the owner to be 12.1¢ a gallon, and on that basis judgment was entered for $24,200.

Appellant makes twenty-seven assignments of error grouped under nine headings, seven of which will be discussed on the merits.

1. *Negligence.* We are of the opinion that there was evidence that the appellant knew of the presence of children and adults on or about the premises who were attracted by curiosity or acquisitiveness.

Our impression from the testimony as to the other valves is that they were still covered by the fill when the valve through which the oil escaped was opened, although two of them were exposed later in the morning of the 22nd, as they appear in photographs taken that day. In any event, there is testimony that all the other outlets were plugged, and had been during the period prior to the fill. We mention these other valves because the fact that they were not chained and padlocked by the respondent prior to the fill is one of the circumstances relied upon by appellant to justify its failure to put a chain and padlock on the wheel controlling the six-inch gate valve which it had installed.

The trial court found:

"That under the facts it was reasonably foreseeable that some unauthorized person might open the newly installed exposed and unlocked valve."

We believe that the trier of the facts could have found either way on the issue of negligence, and that it could justifiably conclude either that the newly installed, exposed, and "readily opened" gate valve should have been locked or the respondent informed of the situation and given an opportunity to protect his property. (The "readily opened" was stoutly controverted.)

2. *Proximate cause.* Appellant urges that, if it was negligent, its negligence was not a proximate cause of the loss of the oil, because the criminal act of whoever opened the valve was an intervening or superseding cause.

We have held that an intervening criminal act may be found to be reasonably foreseeable, and, if so, liability may be predicated thereon. *McLeod v. Grant County School Dist.* (1953), 42 Wn. (2d) 316, 321, 255 P. (2d) 360, and authorities there cited. We are satisfied that what happened here was in no way so extraordinary or improbable as to be outside the ambit of the reasonably foreseeable. *Eckerson v. Ford's Prairie School Dist.* (1940), 3 Wn. (2d) 475, 101 P. (2d) 345; *Bronk v. Davenny* (1946), 25 Wn. (2d) 443, 171 P. (2d) 237; 2 Restatement, Torts, § 453, comment a. We cannot hold as a matter of law that the appellant was not negligent

or that its negligence was not a proximate cause of the loss of the oil.

■ 3. *Contract with King county.* The proposition urged by appellant that it was not liable because it was acting pursuant to a written contract with King county and under the direction of the county and in accordance with its plans and specifications, has no application in the present case, because the trial court found that the appellant's omissions constituted negligence which was a proximate cause of the loss of the oil. The rule relied upon by the appellant, as stated in *Muskatell v. Queen City Constr. Co.* (1940), 3 Wn. (2d) 200, 202, 100 P. (2d) 380, is as follows:

"Where a city, acting within its general powers, contracts for improvement upon a street, and the work is done by a contractor in accordance with the plans and specifications furnished by the city, he is the agent of the city and is not liable for damages *in the absence of negligence in the performance of the work.*" (Italics ours.)

The italicized portion of the rule makes it inapplicable to the present situation.

4, 5. *Trespass.* The respondent had one cause of action based upon negligence, another upon trespass. The trial court found for the respondent in both causes of action and based its judgment on both negligence and trespass.

■ If the judgment can be sustained on any theory presented to the trial court, it will not be reversed. *Senior Citizens League v. Department of Social Security* (1951), 38 Wn. (2d) 142, 146, 228 P. (2d) 478; *Sund v. Keating* (1953), 43 Wn. (2d) 36, 46, 259 P. (2d) 1113. Since we have already indicated that the respondent established a cause of action on the theory of negligence, we will not concern ourselves with the assignments of error and argument relating to the trespass theory.

6. *Trial amendment.* It is strenuously argued that it was improper to permit a trial amendment with respect to damages and to admit evidence thereunder. The allegation in the original complaint with reference to damages was that "the fair market value" of the oil which escaped was $54,816. Appellant was prepared to show (and respondent now admits)

that the oil had no market value. A trial amendment was proposed which changed the theory of damages by adding the allegation that "the value to the owner, of said oil was $54,816." The trial court permitted the amendment and the admission of testimony as to the value to the owner over the vigorous and continuing objection of the appellant.

■ The trial court did not abuse its discretion in permitting an amendment relating to the measure of damages. When a party has demonstrated that he has been injured in his person or property by the tortious conduct of another, it would be unthinkable that he be denied damages because he has selected the wrong measure thereof if he discovers his error and applies for an amendment that would permit him to introduce evidence on the basis of the proper measure of damages. We have gone to considerable lengths to protect the rights of a litigant to damages once he has established that he is entitled to a substantial recovery. *Gilmartin v. Stevens Inv. Co.* (1953), 43 Wn. (2d) 289, 261 P. (2d) 73, 266 P. (2d) 800.

■ Conceivably, the appellant would have been entitled to a continuance had it asked for one and had it made a convincing showing of being misled and surprised. Appellant elected to stand on its contention that the amendment should not be permitted and that the evidence as to the value of the oil to the owner should not be admitted, and did not ask for a continuance to examine respondent's records or to secure other evidence to meet that offered by the respondent on the issue of damages. Where, as here, a party objects to an amendment because of surprise and inability to meet the new issues without further investigation and time for preparation, the overruling of the objection will not constitute reversible error unless the court's ruling is followed by a request for a continuance. *Smith v. Michigan Lbr. Co.* (1906), 43 Wash. 402, 404-5, 86 Pac. 652; *Fifer v. Lynden Lbr. Co.* (1916), 90 Wash. 373, 156 Pac. 1; *Robbins v. Wilson Creek State Bank* (1940), 5 Wn. (2d) 584, 592-4, 105 P. (2d) 1107. Appellant seeks to avoid the effect of these cases by citing and quoting *Leith v. White* (1951), 38 Wn. (2d) 819,

232 P. (2d) 823, which deals with quite a different situation. In that case, no amendment was asked or permitted.

7, 8. *Measure and amount of damages.* The trial court found that the oil which escaped had no market value but:

"That it had a value to its owner who had been in the business of processing and re-refining used crankcase oil for many years. That plaintiff [respondent] had for many years maintained a refinery at Tacoma, Washington, to which refinery the said oil would have been taken had it not been lost, where, after being properly re-refined, it would have been sold on the market. That the oil so lost cost plaintiff 12.1¢ per gallon. That the value to the plaintiff as owner of the oil so lost was at least 12.1¢ per gallon."

Appellant asserts that the measure of damages, *i. e.,* the value to the owner, was erroneous; that the proof was insufficient to establish the fact of any damage or that 12.1¢ a gallon was the cost to the respondent.

We are satisfied that the oil had no market value. However, the fact that personal property which is destroyed by the wrongful or negligent act of another had no market value, does not restrict the plaintiff's recovery to nominal damages. The value must be ascertained in some other rational way and from such elements as are attainable. 15 Am. Jur. 534, Damages, § 125. Referring to such a situation, it is said:

"In such case the proper measure of damages is generally its actual value or its value to the owner. The value of an article may be shown by proof of such elements or facts affecting the question as may exist—such as its cost, the cost of reproducing or replacing it, its utility and use, its condition and age, and the extent, if any, to which it has deteriorated or depreciated through use, damage, age, decay, or otherwise. A recovery cannot be had on the basis of a purely sentimental value to the owner or of a fanciful price which he might for special reasons place thereon." 15 Am. Jur., *supra.*

See, also, *Covey v. Western Tank Lines* (1950), 36 Wn. (2d) 381, 218 P. (2d) 322.

We are unable to agree with the appellant in its attacks upon the fact, theory, or computation of damages.

9. *Improper admission of evidence.* Appellant urges that the trial court committed numerous errors relating to the admission of evidence. We shall not take the space to review in detail the rulings complained of. In several instances they involve the objection that oral or written statements were hearsay and self-serving, which would be a valid objection if the testimony or writing were received as proof of the truth of the statements made, but here they were admitted to prove only that the statements were in fact made. In some instances, the evidence to which objection is made had to do with the trespass theory, which we have not discussed and concerning which we express no opinion.

We have said that in a trial to the court it will be presumed that the court is not influenced by the introduction of improper testimony. *Blair v. McKinnon* (1952), 40 Wn. (2d) 492, 244 P. (2d) 250. Appellant has not convinced us that the trial court was influenced in its decision by any of the evidence which has been made the subject of assignments of error.

The judgment of the trial court is affirmed.

HAMLEY, C. J., MALLERY, WEAVER, and ROSELLINI, JJ., concur.

November 16, 1955. Petition for rehearing denied.