[Nos. 27943-2-I; 28246-8-I.   Division One.   January 11, 1993.]

INGRID BENTZEN, *Appellant*, v. ALAN DEMMONS, *as Personal Representative, Respondent.*

---

340

*James D. McBride, Sr.,* and *Julin, Fosso, Sage, McBride & Mason,* for appellant.

*Paul G. Eklund; Philip A. Talmadge* and *Talmadge & Cutler, P.S.,* for respondent.

AGID, J. — Ingrid Bentzen appeals the judgment entered against her in an action to enforce an oral contract to make a will. She argues that the trial court erred in applying the deadman's statute, in finding that she did not establish the existence of an oral contract to devise, in awarding attorney

fees to the opposing party, and in failing to timely enter written findings of fact and conclusions of law. We reverse and remand for a new trial.

Jesselyn Roehr died intestate on November 17, 1988. Alan Demmons, Roehr's nephew and her only heir under the Washington laws of intestate succession, was appointed personal representative of her estate. Ingrid Bentzen is a long-time friend of Mrs. Roehr's who claims that an oral contract to make a will existed between herself and the decedent. She filed this action against Alan Demmons as the personal representative of Mrs. Roehr's estate to enforce that contract.

Bentzen first became acquainted with Mrs. Roehr in 1958. In 1961, Bentzen's family moved to California and she moved in with the Roehrs so that she could stay in Washington to finish high school. Bentzen participated in the care and management of the Arabian horses that the Roehrs owned and, in turn, received room and board. She continued to reside with the Roehrs, and after their divorce with Mrs. Roehr, until 1977. During the last year she lived with Mrs. Roehr, Bentzen helped her move into a condominium and the two looked together for a farm for Bentzen and the women's horses. Although Bentzen purchased the farm in her name only, two witnesses testified that Mrs. Roehr identified one of the bedrooms in the house at the farm as hers.

A number of witnesses also testified concerning the warm and personal nature of the friendship between Mrs. Roehr and Bentzen, in which their mutual love for keeping and showing horses clearly played a significant part. It is apparent from the record that Mrs. Roehr regarded Bentzen virtually as a daughter. Several witnesses testified that Mrs. Roehr had told them that she had made arrangements for all her property to go to Bentzen after her death since Bentzen would know what to do with everything. Evelyn Huff, an old friend of Mrs. Roehr's, testified that Mrs. Roehr told her in 1982 that she had an understanding with Bentzen that all Roehr's property would go to her after her death

in return for Bentzen's caring for her should she become ill or incapacitated.[1] Elma May White, a friend of Mrs. Roehr's for over 40 years, testified that Mrs. Roehr told her that Bentzen was not being paid for riding and showing her horses because all her property would go to Bentzen. White also testified that Mrs. Roehr told her she felt fortunate that she would be able to go live with Bentzen when she became older or incapacitated because she greatly feared nursing homes. Ray Fletcher, a horse show association officer who had frequent contact with Mrs. Roehr, testified that after she was hospitalized in 1986, Roehr told him that she would be moving to Bentzen's farm. Witnesses also testified that in the last few years of Mrs. Roehr's life, Bentzen took her to several horse shows and made the arrangements necessary to accommodate the wheelchair Mrs. Roehr required.

During trial, Bentzen asked the trial court to permit her to testify about the oral contract she alleged between herself and the deceased. She argued that Demmons had waived the bar imposed on such testimony by the deadman's statute when he submitted an affidavit in connection with an earlier motion for partial summary judgment. The trial judge denied that motion and issued an oral ruling, finding for Demmons on all issues and dismissing Bentzen's complaint. Written findings and conclusions were not entered until March 1992, approximately 18 months later. In a separate decision, the trial court awarded costs and attorney fees to Demmons in the amount of $515 and $55,000, respectively. Bentzen appeals from each of those decisions, which we have consolidated.

## I
### WAIVER OF DEADMAN'S STATUTE

Bentzen first contends that the trial court erred in concluding that Demmons' statements in an affidavit submitted in connection with his earlier summary judgment motion did

---

[1]This was Mrs. Huff's testimony on direct examination. When called as a rebuttal witness, Mrs. Huff referred to the arrangement between the decedent and Bentzen as an "agreement".

not waive the deadman's statute.[2] The deadman's statute, RCW 5.60.030, provides in relevant part:

> No person offered as a witness shall be excluded from giving evidence by reason of his or her interest in the event of the action, as a party thereto or otherwise, but such interest may be shown to affect his or her credibility: PROVIDED, HOW-EVER, That in an action or proceeding where the adverse party sues or defends as executor, administrator or legal representative of any deceased person, or as deriving right or title by, through or from any deceased person . . . [that person] shall not be admitted to testify in his or her own behalf as to any transaction had by him or her with, or any statement made to him or her, or in his or her presence, by any such deceased . . . person . . ..

A person is a party in interest for purposes of RCW 5.60.030 when he or she stands to gain or lose in the action in question. *In re Estate of Shaughnessy*, 97 Wn.2d 652, 656, 648 P.2d 427 (1982). Not all testimony by a party in interest about the words or acts of the decedent is prohibited. The bar extends only to words or acts involving a transaction.

> A transaction . . . means the doing or performing of some business between parties, or the management of any affair. To be a transaction in such a case, the matter concerning which the testimony is given must involve some act by and between the parties for the benefit or detriment of one or both of the parties. It has been held, and properly so, that the test of transactions with [the] deceased . . . is whether [the] deceased, if living, could contradict the witness of his own knowledge.

---

[2]The statements made by Demmons in his affidavit on which Bentzen relies are:

"I have no personal knowledge of any contract or agreement between Ms. Bentzen and my Aunt wherein my Aunt promised to will her estate to Mrs. [sic] Bentzen for her alleged services. My Aunt never told me of any such agreement prior to her death, nor have I heard of any such agreement from anyone else.

"I have no personal knowledge of any contract or agreement between Ms. Bentzen and my Aunt wherein my Aunt promised to reimburse Ms. Bentzen for her alleged services. My Aunt never told me of any such agreement prior to her death, nor have I heard of any such agreement from anyone else.

"I am not aware of any health management services provided by Ms. Bentzen to my Aunt. In fact, after my Aunt's death, I found that many of her medications in her home were many years old.

"Mrs. Roehr's check record indicates that she was paying for window cleaning and household cleaning services. I am not aware of any household services provided to her by Ms. Bentzen."

(Citations omitted.) *In re Estate of Wind*, 27 Wn.2d 421, 426, 178 P.2d 731, 173 A.L.R. 1276 (1947). Testimony of a negative character, *i.e.*, testimony regarding what a transaction was not, can also be excluded under the statute. *Martin v. Shaen*, 26 Wn.2d 346, 352, 173 P.2d 968 (1946).

■■ The protection of the statute may be waived, however, when the protected party introduced evidence concerning a transaction with the deceased. *McGugart v. Brumback*, 77 Wn.2d 441, 450, 463 P.2d 140 (1969); *Ellis v. Wadleigh*, 27 Wn.2d 941, 952, 182 P.2d 49 (1947); *Percy v. Miller*, 115 Wash. 440, 444-45, 197 P. 638 (1921); *Thor v. McDearmid*, 63 Wn. App. 193, 202, 817 P.2d 1380 (1991). Once the protected party has opened the door, the interested party is entitled to rebuttal. *Johnston v. Medina Imp. Club, Inc.*, 10 Wn.2d 44, 59-60, 116 P.2d 272 (1941). However, a waiver by introduction of testimony about one transaction does not extend to unrelated transactions and conversations. *In re Estate of Malloy*, 57 Wn.2d 565, 568, 358 P.2d 801 (1961). Evidence concerning a transaction with the deceased presented at an earlier proceeding or submitted in connection with a summary judgment motion can be prohibited by RCW 5.60.030. *In re Estate of Reynolds*, 17 Wn. App. 472, 475-76, 563 P.2d 1311 (1977). Consequently, such evidence may also constitute a waiver which would permit rebuttal testimony concerning the transaction at a subsequent trial.[3]

We conclude that Demmons' statements that his aunt never told him of the existence of an oral agreement constituted a waiver of the deadman's statute sufficient to overcome the bar imposed by the statute.[4] Even though Dem-

---

[3]*McGugart*, 77 Wn.2d at 449, is not to the contrary. There, the Supreme Court distinguished between pretrial proceedings and the trial phase itself, holding that waiver could not occur in the *discovery* phase of the trial because information gathered at that stage would not necessarily be introduced as evidence at trial. The summary judgment motion in this case was, however, part of the trial itself in that evidence was submitted to the court to limit the issues which actually went to trial. Thus, the evidence that was introduced to support a motion for partial summary judgment may, under the reasoning of *McGugart*, constitute a waiver.

[4]The statements were also misleading since they suggest that Demmons' relationship with his aunt was such that she would have told him of such an

mons did not testify about the specific transaction, his negative testimony went to the heart of Bentzen's claims and the matters directly at issue in this case. He was testifying, in effect, that such an agreement did not exist and that no services were performed in reliance on it. His negative assertions also denied the conversation between Bentzen and the decedent, to which Bentzen was prepared to testify, had ever occurred. The trial court was therefore required to permit Bentzen to rebut Demmons' assertions with her own testimony about the conversation in which she alleged the oral agreement between herself and the deceased was formed.[5] Demmons' statements regarding Bentzen's failure to provide health maintenance and other services to the decedent also constituted a waiver of the bar that would normally be imposed by the deadman's statute. Bentzen should also have been permitted to testify about such activities.[6]

## II
### EXISTENCE OF AN ORAL CONTRACT TO DEVISE

■■ Bentzen next argues that the trial court erred in finding that Bentzen failed to prove the existence of an oral

---

agreement had it existed. According to Demmons' own admissions at trial, his contact with his aunt as an adult was limited to a couple of dinners at restaurants while he was traveling through Seattle on business in 1982-83. During those dinners he said that the conversation was so guarded they had to search for things to talk about and spoke mainly about horses. Other witnesses testified that Mrs. Roehr disliked her own family, actively avoided contact with them, and would not have wanted to leave them anything.

[5]No objection to Demmons' statements by Bentzen was necessary. *See Fies v. Storey*, 21 Wn. App. 413, 420, 585 P.2d 190 (1978) (once the adverse party testifies in favor of the estate about transactions or conversations with the decedent, the door is open for the party in interest to testify because the adverse party's testimony constitutes a waiver), *overruled on other grounds in Chaplin v. Sanders*, 100 Wn.2d 853, 676 P.2d 431 (1984). There is no requirement that a party object to testimony which, for tactical reasons, it may choose to permit.

[6]Bentzen also raises the issue of waiver in connection with financial documents submitted at the time. RCW 5.60.030 does not, however, bar this documentary evidence. *Thor*, 63 Wn. App. at 202. Thus, the admission of the financial documents cannot constitute a waiver of the statute. While Demmons' affidavit itself obviously takes the form of a document, an affidavit may be barred where, as here, it is offered simply as a substitute for live testimony. *Wildman v. Taylor*, 46 Wn. App. 546, 555, 731 P.2d 541 (1987).

contract. While equity will recognize oral contracts to devise, such contracts are not favored and will be enforced only upon very strong evidence that the promise was made in exchange for valuable consideration and deliberately entered into by the decedent. *Cook v. Cook*, 80 Wn.2d 642, 644, 497 P.2d 584 (1972). To establish such an agreement, the claimant must prove that (1) the contract alleged to exist was entered into by the decedent and the person asserting that the contract existed; (2) the services contemplated as consideration for the agreement were actually performed; and (3) the services were performed in reliance on the agreement. *In re Estate of Thornton*, 81 Wn.2d 72, 76, 499 P.2d 864 (1972); *Cook*, 80 Wn.2d at 644-45. Each of these elements must be established to a "high probability". *Cook*, 80 Wn.2d at 647. Statements of intention alone do not necessarily support the existence of an express contract to devise. *Cook*, 80 Wn.2d at 644. Our review in this case is limited to determining "whether there exists the necessary quantum of proof to support the trial court's findings". *In re Sego*, 82 Wn.2d 736, 740, 513 P.2d 831 (1973); *Thompson v. Henderson*, 22 Wn. App. 373, 376, 591 P.2d 784 (1979). Hence, we cannot substitute our findings for those of the trial court.

The trial court found that the evidence offered at trial was not sufficient to establish each of the elements of an oral contract to a high probability. It was clear from the testimony adduced at trial, however, and the trial court acknowledged, that the decedent intended that everything she owned go to Bentzen. The testimony erroneously excluded under the deadman's statute, taken together with that of Mrs. Huff,[7] could establish all the elements of an oral contract to a high probability. We therefore must remand this case for a new trial in which the court considers all of the admissible testimony.

---

[7]For purposes of proving an oral contract to devise, there is no significant difference between an "understanding" and an "agreement". Thus, Mrs. Huff's testimony in the first instance that there was an "understanding" between Bentzen and the decedent does not in itself negate Bentzen's position that there was an agreement.

The trial court appears to have concluded that the loving and affectionate nature of the relationship between Bentzen and the deceased suggested that an oral contract to devise did *not* exist. Bentzen provided love, companionship and care. She also attended to the decedent's personal needs and business, set aside a room in her home for the decedent, and cared for and showed her horses without remuneration.

The trial court's conclusion was in error for two reasons. First, the nature and performance of services is irrelevant to the issue of whether an oral contract exists. Rather, services rendered are properly considered only as establishing that, the agreement having been entered into, the claimant acted in reliance on it. *Ellis*, 27 Wn.2d at 952 (where an elderly woman had asked her sister to live with her and care for her in return for a promise to leave her all her property and the sister did so, it was irrelevant that the sister would have done so anyway, although that evidence went only to the issue of reliance); *Humphries v. Riveland*, 67 Wn.2d 376, 380, 407 P.2d 967 (1965); *Blodgett v. Lowe*, 24 Wn.2d 931, 939, 167 P.2d 997 (1946). Second, there is no basis on which to penalize Bentzen for being a caring and generous person. To the contrary, these actions suggest a level of dedication substantially greater than would be expected of an adult child, let alone an adult friend. It was thus both legally and factually improper for the trial court to rely on Bentzen's generous character and her charity work as a basis for deciding that it was not highly probable that an oral agreement to devise existed.

### III
### BELATED ENTRY OF WRITTEN FINDINGS
### AND CONCLUSIONS

Bentzen also contends that reversal is required by the trial court's failure to enter written findings of fact and conclusions of law. CR 52(a)(1) provides in pertinent part:

> In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law.

When findings and conclusions as required by CR 52(a)(1) are not entered, CR 52(d) provides:

> A judgment entered in a case tried to the court where findings are required, without findings of fact having been made, is subject to a motion to vacate within the time for the taking of an appeal. After vacation, the judgment shall not be reentered until findings are entered pursuant to this rule.

Here, no motion to vacate was made within the time for filing an appeal, nor does there appear to have been an objection made to the belated entry of those findings. Because CR 52(d) permits the entry of late findings even where a motion to vacate has been granted, the belated entry of findings and conclusions alone does not provide grounds for reversal.

## IV
### ATTORNEY FEES

██ Bentzen also appeals from the trial court's award of attorney fees to Demmons in the amount of $55,000. Under the American rule, the parties are responsible for their own attorney fees unless an award of fees is authorized by a private agreement, statute, or a recognized ground of equity. Demmons argues on appeal that the trial court's award of attorney fees was authorized by both RCW 11.24.050 and RCW 11.96.140, and on recognized equitable grounds, specifically the common fund doctrine and under the bad faith conduct exception. *Mellor v. Chamberlin*, 100 Wn.2d 643, 649, 673 P.2d 610 (1983). We cannot affirm the award of attorney fees based on any of the grounds argued on appeal because none of those grounds was argued below.[8]

---

[8]Even if the arguments had been raised, however, we could not affirm the award. As a matter of law, we would reject Demmons' contention that he is entitled to an award of attorney fees based on the common fund doctrine or the bad faith conduct exception. The common fund doctrine is limited to cases where the litigant has created or preserved a specific fund for the benefit of others in addition to himself. *Hsu Ying Li v. Tang*, 87 Wn.2d 796, 798, 557 P.2d 342 (1976). Because Demmons alone stood to benefit from the proceeds he was acting to protect, he was not acting to preserve a common fund.

With respect to the bad faith exception, this court has noted that

> [b]ad faith is defined as "actual or constructive fraud" or a "neglect or refusal to fulfill some duty . . . not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive."

*State v. Sizemore*, 48 Wn. App. 835, 837, 741 P.2d 572 (quoting Black's Law Dictionary 127 (5th ed. 1979)), *review denied*, 109 Wn.2d 1013 (1987). No finding

In addition, the trial court entered no findings supporting either the statutory or equitable grounds on which it relied in awarding attorney fees. Nor were any findings entered detailing the basis for the trial court's conclusion that the amount of the fees requested was reasonable. While the trial court has great discretion in determining the amount of attorney fees to be awarded, that award must be reasonable. *Progressive Animal Welfare Soc'y v. UW*, 114 Wn.2d 677, 688, 790 P.2d 604 (1990). A trial court's determination of a reasonable fee will not be reversed absent an abuse of that discretion. *Progressive Animal Welfare Soc'y*, 114 Wn.2d at 688. To make that determination, the trial court should multiply a reasonable hourly rate by the number of hours reasonably expended, in light of factors such as the difficulty of the questions involved, the skill required, the rate customarily charged by other attorneys, the amount involved, the certainty that fees will be collected, and the character of the employment. *Scott Fetzer Co. v. Weeks*, 114 Wn.2d 109, 124, 786 P.2d 265 (1990) (citing *Bowers v. Transamerica Title Ins. Co.*, 100 Wn.2d 581, 593-602, 675 P.2d 193 (1983)). In the absence of any specific findings as to the basis for the award or the rationale underlying the court's conclusion that it was reasonable, we cannot determine whether the award made here constituted an abuse of the trial court's discretion.

In view of our disposition of the other issues raised by Bentzen, the award of fees to Demmons may become moot

---

was entered by the trial court that Bentzen acted in bad faith in bringing this action, and there is no basis on which such a finding could properly have been made.

RCW 11.24.050 would not support the trial court's award of attorney fees in this case since it does not concern a will contest within the meaning of the statute. *See In re Estate of Hatfield*, 46 Wn. App. 247, 251, 730 P.2d 696 (1986), *review denied*, 108 Wn.2d 1018 (1987).

Finally, RCW 11.96.140 does not apply in this case because this proceeding, as a will contest, is governed by RCW 11.24, which has its own fee and cost provisions in RCW 11.24.050. The provisions of RCW 11.96 apply only where they do not conflict with other chapters of the probate code, including RCW 11.24. RCW 11.96.070(7).

after a new trial. If, however, the court awards fees to either party on retrial, the basis for and calculation of that award should be supported by appropriate findings and conclusions.

Reversed and remanded for further proceedings consistent with this opinion.

PEKELIS, A.C.J., and GROSSE, J., concur.