[No. 46555-4-I.   Division One.   April 23, 2001.]

SUSAN NEELY BOTKA, ET AL., *Appellants*, v. ESTATE OF RAYMOND C. HOERR, *Respondent*.

*Karol Whealdon-Andrews*, for appellants.

*Peter S. Lewicki*; and *William A. Olson* and *George S. Martin* (of *Aiken, St. Louis & Siljeg, P.S.*), for respondent.

BAKER, J. — Susan Botka, a hospice nurse, brought this negligence claim against the estate of Raymond Hoerr for injuries sustained when she fell down an elevator shaft at the Hoerr residence. The defendant estate argued that Botka was a trespasser and that the deadman's statute barred her from testifying to her conversations with the decedent. Botka argued that she had permission to enter in the manner that she did, and that the estate waived the protection of the deadman's statute. The trial court held that Botka was a trespasser as a matter of law, found that the defendant did not waive the deadman's statute, and granted summary judgment to defendant. Botka appeals. We hold that there are material issues of fact regarding Botka's legal status, and that the estate has waived the deadman's statute. We therefore reverse and remand the case for trial.

I

Susan Botka was assigned to provide hospice care to Raymond Hoerr, who was terminally ill from cancer. Botka visited Hoerr at his home once or twice a week to provide

hospice services. She customarily scheduled all hospice visits in advance by phone call at the beginning of the week. Hoerr was also being cared for by his two daughters and his son-in-law on a rotating basis.

Hoerr lived in a three-story home, and stayed on the third level. The second floor contained bedrooms and a bathroom, as well as a laundry room. The ground floor was a mother-in-law apartment leased to a third party. The home had a set of exterior stairs leading from the ground floor to the third floor, as well as interior stairs leading from the second to the third floor.

Botka testified that when she visited Hoerr, she would simply knock and announce herself before entering the home rather than waiting for someone to come to the door. In accordance with hospice custom, this practice was intended to reduce disruptions for bedridden patients and busy caregivers. Hoerr's daughter, Nancy Walsworth, confirmed in her deposition that Botka did not wait for someone to come to the door before entering, and that most of the hospice workers would typically enter the Hoerr residence in the same manner. However, in her declaration in support of the estate's summary judgment motion, Walsworth contradicted herself and stated that hospice workers had no right to enter the home without being invited in. Walsworth also declared that Botka had no authority to enter unannounced into any part of the home.

On previous visits, Botka had reached Hoerr's living area by ascending the exterior stairs to the third floor, as she had been told to do. However, after several visits, Botka expressed concern about using the exterior stairs to the third floor due to a fear of heights. Hoerr suggested that Walsworth show Botka out of the house by leading her down the interior staircase to the second floor entrance. Walsworth did so. It was Botka's understanding that Hoerr and Walsworth had given her permission to knock and announce herself at the second floor entrance, then proceed to the third floor via the interior stairs.

On the day of the accident, Botka went to the Hoerr

residence to deliver medical supplies. Botka testified that she had called Hoerr to tell him that she was coming. She went up the exterior stairs to the second floor entrance, knocked on the door, announced herself, and proceeded to enter. The entry doors to the laundry room were off the exterior second floor deck. She thought that the laundry room entrance was the same second floor door she had taken out of the house on her prior visit, so she went in, looking for the interior stairway to the third floor. The room was dim. She saw two doors, and opened the door directly in front of her. It was dark, and Botka assumed it was a hallway. She felt along the side walls for a light switch, but did not find one. She then stepped forward, still feeling for a light switch, and fell approximately eight feet to the bottom of an elevator shaft. The door to the elevator shaft was an ordinary interior door, with no sign indicating that it was an elevator, and no switches on the wall that might suggest an elevator. Botka sustained serious injuries.

Walsworth was at the home with her father on the day of the accident. She heard a loud noise, searched the home, and discovered Botka at the bottom of the elevator shaft. Walsworth said that she did not know Botka was coming that day, and was not aware that Botka had entered the home. Hoerr died a few weeks after Botka's accident, and Walsworth became the personal representative of Hoerr's estate.

Botka filed a personal injury claim against the estate of Raymond Hoerr. The estate moved for summary judgment, arguing that Botka was a trespasser on the day of her fall because she entered the home, and specifically the laundry room, without the knowledge or permission of the occupants. Botka opposed the motion, arguing that she had permission from both Walsworth and Hoerr to enter the home on the second floor, that she had called Hoerr in advance to let him know she was coming, and that as a hospice worker she routinely entered without waiting for someone to answer the door. She relied on excerpts from Walsworth's deposition as well as her own declaration.

Botka also argued that even if she were a trespasser, the unmarked elevator shaft was willful and wanton conduct warranting liability to trespassers.

In its reply, the estate invoked the deadman's statute[1] in moving to strike Botka's testimony as to her conversations with Hoerr. The estate also argued that there is no evidence in the record, even including the challenged testimony, that Botka had permission to proceed unescorted into the home. Therefore, it argued, Botka's status as a trespasser was determinable as a matter of law.

The trial court granted the estate's motion to strike based on the deadman's statute, and granted summary judgment to the estate. The trial court denied Botka's verbal request for a continuance at the hearing for failure to comply with CR 56(f). Botka moved for reconsideration, arguing that the estate had waived the protection of the deadman's statute, and again requested a continuance for further discovery. The trial court denied Botka's motion for reconsideration. This appeal followed.

## II

On appeal from summary judgment, the standard of review is de novo and the appellate court performs the same inquiry as the trial court.[2] All facts and reasonable inferences are considered in the light most favorable to the nonmoving party.[3]

Botka contends that Walsworth waived the protection of the deadman's statute by implicitly denying the existence of conversations between Botka and Hoerr that go to the heart

---

[1] RCW 5.60.030, commonly referred to as the deadman's statute, states in pertinent part that "in an action or proceeding where the adverse party sues or defends as executor, administrator or legal representative of any deceased person, . . . then a party in interest or to the record, shall not be admitted to testify in his or her own behalf as to any transaction had by him or her with, or any statement made to him or her, or in his or her presence, by any such deceased, incompetent or disabled person[.]"

[2] *Nivens v. 7-11 Hoagy's Corner*, 133 Wn.2d 192, 197-98, 943 P.2d 286 (1997).

[3] *Sherman v. State*, 128 Wn.2d 164, 183, 905 P.2d 355 (1995).

of Botka's case. In her declaration, Walsworth stated that:

> Anyone coming to see my father had to walk up the exterior stairwell to the third floor . . . [i]t was Ms. Botka's normal practice to call before she came out to the home. On that day, she did not call and I was not aware that she was coming. I did not give her permission to enter the laundry room. There was no reason for her to be in the laundry room. I did not invite her into the home on that day because I was not even aware that she was there. She should have announced her arrival at the third floor as she had done before. I would have then escorted her to my father. She had no authority to enter unannounced into any part of the home especially the laundry room where she had no reason to be in the first place.

Botka contends that (1) Walsworth cannot swear that Botka "did not call" on the day of the accident without implying that Botka never spoke to her father, because Walsworth and Hoerr were the only people in the home at that time; and (2) Walsworth cannot say that Botka "had no authority" to enter on the second floor without implying that Hoerr did not give Botka permission to do so. Therefore, the estate waived the protection of the deadman's statute and opened the door to Botka's rebuttal testimony regarding her conversations with Hoerr. We agree.

■ ■ The deadman's statute may be waived by an adverse party by (a) failure to object, (b) cross-examination which is not within the scope of direct examination, or (c) testimony favorable to the estate about transactions or communications with the decedent.[4] The deadman's statute precludes not only positive assertions that a transaction or conversation with the decedent took place, but also testimony of a "negative" character denying interactions with the decedent.[5] Such negative testimony by an adverse party in the context of a summary judgment motion constitutes a waiver of the deadman's statute and opens the door to

---

[4] *Thor v. McDearmid*, 63 Wn. App. 193, 202, 817 P.2d 1380 (1991).

[5] *Martin v. Shaen*, 26 Wn.2d 346, 352-53, 173 P.2d 968 (1946).

rebuttal from the interested party.[6] In *Bentzen v. Demmons*, we concluded that the defendant's statements that his deceased aunt never told him of the existence of an oral agreement between his aunt and the plaintiff effectively implied that the agreement never existed, thereby waiving the deadman's statute and opening the door for rebuttal.[7]

We hold that Walsworth's declaration waived the deadman's statute. By stating that Botka "had to walk up the exterior stairwell to the third floor," "had no authority to enter unannounced into any part of the home," that "there was no reason for her to be in the laundry room," and "she should have announced her arrival at the third floor," Walsworth necessarily implied that Hoerr did not give Botka authority to act as she did. This opens the door for Botka to rebut Walsworth's statements with testimony regarding Botka's conversations with Hoerr. Similarly, Walsworth's statement that Botka "did not call" also waived the deadman's statute. Because Hoerr and Walsworth were both at the home that day, it is possible that Hoerr answered the phone when Botka called. By categorically stating that Botka did not call, she opened the door to allow Botka to rebut Walsworth's statement by testifying that Hoerr had answered the phone that day.

■■ We also hold that the estate waived the deadman's statute by failing to object to Walsworth's deposition testimony, submitted by Botka in opposition to the estate's motion for summary judgment. At deposition, Walsworth directly contradicted statements made in her declaration and admitted that her father gave Botka permission to enter the home through the second floor entrance. But while the estate in its reply brief expressly moved to strike Botka's testimony as to her conversations with Hoerr, it was silent on the matter of Walsworth's deposition testimony. Botka argues that this failure to timely invoke the deadman's statute constitutes a waiver. Botka is correct. If

---

[6] *Bentzen v. Demmons*, 68 Wn. App. 339, 345-46, 842 P.2d 1015 (1993).

[7] *Bentzen*, 68 Wn. App. at 345-46.

the deadman's statute is waived, or if evidence of conversations or transactions with the decedent by parties in interest is admitted without objection, the evidence is entitled to the same weight as any other evidence received.[8]

The estate argues that it did not waive the statute with respect to Walsworth's deposition testimony because the act of responding to discovery requests does not constitute a waiver of the deadman's statute unless the adverse party introduces the material himself.[9] But the cases on which the estate relies did not address whether a waiver occurs when the party in interest introduces the discovery without objection by the personal representative. In *Diel v. Beekman*, the party in interest introduced the deposition testimony of the adverse party and argued that the bare act of responding to discovery requests waived the statute. The court disagreed, reasoning that "[n]o useful purpose would be served by requiring a party entitled to the protection of RCW 5.60.030 to preserve that protection by resisting discovery until a court order commanded compliance."[10] But here, Botka introduced Walsworth's deposition testimony without objection.

## III

Given that the estate waived the protection of the deadman's statute, our final task is to decide whether Botka presented sufficient evidence to defeat summary judgment. Botka argues that there is a question of material fact regarding her status on the premises and the scope of her invitation to enter the premises. The estate contends that Botka was a trespasser because she had no permission to enter without being greeted and escorted in, regardless of whether she was entering on the second or the third floor. ▮▮▮▮ A landowner's duty of care to a person on his land

---

[8] *Boettcher v. Busse*, 45 Wn.2d 579, 582, 277 P.2d 368 (1954).

[9] *Diel v. Beekman*, 7 Wn. App. 139, 154-56, 499 P.2d 37 (1972); *McGugart v. Brumback*, 77 Wn.2d 441, 449, 463 P.2d 140 (1969).

[10] *Diel*, 7 Wn. App. at 155.

depends on the entrant's status as an invitee, licensee or trespasser.[11] An invitee is one who is expressly or impliedly invited on the premises of another.[12] A licensee is a person who is privileged to enter or remain on land only by virtue of the possessor's consent.[13] A trespasser, for purposes of premises liability, is one "'who enters the premises of another without invitation or permission, express or implied, but goes, rather, for his own purposes or convenience, and not in the performance of a duty to the owner or one in possession of the premises.'"[14] Generally, a landowner owes a higher duty to a licensee than to a trespasser and owes the highest duty to an invitee.[15] Permission sufficient to establish invitee or licensee status can be implied from the prior conduct and statements of the property possessors or their agents.[16] The scope of an invitation depends on what the invitee is to do on the premises, as well as on where the invitee may reasonably be foreseen to go.[17]

Botka testified that both Hoerr and Walsworth knew that Botka was uncomfortable ascending the exterior stairs to the third floor, and that they had given her express permission to enter the home at the second floor. In addition, Botka points to Walsworth's statement she had "escorted [Botka] out of the house by taking her down an interior staircase and showing her out on the second level" on one of her prior visits. Although Walsworth's declaration does not explain why she showed Botka out on the second floor that day, Walsworth testified at deposition that Botka had "told us she had a fear of heights" and "our exterior staircases

---

[11] *Degel v. Majestic Mobile Manor*, 129 Wn.2d 43, 49, 914 P.2d 728 (1996).

[12] *Dotson v. Haddock*, 46 Wn.2d 52, 54, 278 P.2d 338 (1955).

[13] *Tincani v. Inland Empire Zoological Soc'y*, 124 Wn.2d 121, 133, 875 P.2d 621 (1994).

[14] *Winter v. Mackner*, 68 Wn.2d 943, 945, 416 P.2d 453 (1966) (quoting *Scheck v. Ringling Bros. & Barnum & Bailey Combined Shows*, 5 Wn.2d 599, 605, 105 P.2d 838 (1940)).

[15] *Degel*, 129 Wn.2d at 49.

[16] *Winter*, 68 Wn.2d at 945.

[17] *Miniken v. Carr*, 71 Wn.2d 325, 328, 428 P.2d 716 (1967).

kind of bothered her." Botka testified that she reasonably understood Walsworth's act in showing her the second floor entrance as authorization to enter the home via the second floor on future visits. This conduct created a question of implied permission for Botka to come to the second floor, as well as impeaching Walsworth's credibility on the consent issue.

██ Botka also testified that it was the usual custom of hospice workers to knock, announce, and enter rather than waiting to be escorted in. Walsworth initially confirmed that Botka as well as most of the other hospice workers did this on prior visits to the Hoerr residence, but later contradicted this by stating that hospice workers were supposed to be greeted into the home. Botka testified that on the day of the accident, she knocked and announced herself before entering via the second floor entrance. Botka also testified that she had called Hoerr to tell him she was coming. Botka does not contest that she had no official business in the laundry room, but testified that she inadvertently entered the laundry room while looking for the interior stairwell that led to the third floor.

Viewing the facts in the light most favorable to Botka as the nonmoving party, we hold that Botka presented sufficient evidence to overcome summary judgment. A jury could find that the parties had established a custom of having Botka and other hospice workers knock and announce themselves on their way in, without waiting for someone to officially greet them at the door. A jury could also find that Botka had express or implied permission to follow this custom by knocking, announcing herself and entering at the second floor, and that she did so on the day of the accident. Although it is uncontested that she had no express permission to be in the laundry room, a jury could find that it was reasonably foreseeable that she might get lost in an attempt to find the interior staircase to the third floor, inadvertently enter the laundry room, and fall down the unmarked elevator shaft. Finally, a jury could find that Botka was an invitee or licensee at the time of the accident

and that the open elevator shaft, concealed behind an unmarked door, violated the landowner's duty of care. Therefore, the trial court erred in granting summary judgment to the estate.

Reversed.

BECKER, A.C.J., and GROSSE, J., concur.