IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| THE ESTATE OF DAVID N. WHEAT BY TENA M. WHEAT, in her capacity as Personal Representative of the Estate; TENA M. WHEAT, individually as the widow of the deceased; ZACHARY N. WHEAT, individually as the son of the deceased; and CASSIDY D. WHEAT, individually as the daughter of the deceased, | ) ) ) ) ) ) ) ) ) ) ) | No. 35047-9-III |
| Appellants, | ) ) | UNPUBLISHED OPINION |
| v. | ) ) | |
| FAIRWOOD PARK HOMEOWNERS ASSOCIATION, a Washington corporation; FAIRWOOD PARK I HOMEOWNERS ASSOCIATION, a Washington corporation; and FAIRWOOD PARK II HOMEOWNERS ASSOCIATION, a Washington corporation, | ) ) ) ) ) ) ) ) ) ) | |
| Respondents. | ) | |

LAWRENCE-BERREY, C.J. — The Estate of David Wheat (Estate) appeals from the

summary judgment dismissal of its negligence claims against Fairwood Park

Homeowners Association, Fairwood Park I Homeowners Association, Fairwood Park II

Homeowners Association (collectively the HOA), and Spokane County (County). In

general, the Estate argues that Mr. Wheat was a licensee, not a trespasser, and that its

claims should proceed forward against the HOA and the County. Even if we deem Mr.

Wheat a licensee, we conclude that a reasonable trier of fact can only find that the HOA

and the County did not breach any duty to Mr. Wheat. We therefore affirm the trial

court's summary dismissal of the Estate's claims.

## FACTS

The HOA owns and maintains a private park that consists of a swimming pool and

other amenities for HOA members and their guests. A road runs east and west through

the private park. East of the road is Fairwood Drive, a public road. West of the road is a

private housing development that leads to the back entrance of the golf course formerly

known as the Spokane Country Club. The County has an easement to use the HOA's

road and uses the road to maintain a pump station near the pool. Both sides of the road

are gated. In recent years, the west gate was always closed but unlocked while the east

gate was often open and rarely locked. The fatal injury occurred at the east gate.

Photograph 1 shows the east gate from Fairwood Drive. Br. of Resp't HOA, at

App. 2; Clerk's Paper (CP) at 97.



**Photograph 1**

The east gate consists of a pair of tubular arms meeting in the middle when closed. We will refer to the arms as the south arm and the north arm.

Photograph 1 shows the road with the gate in the closed position and a sign on the south arm. Photograph 2 shows a closeup view of the sign. Br. of Resp't HOA, at App. 4; CP at 90. Photograph 3 shows the sleeve mechanism that permits the two arms to be locked. Br. of Resp't HOA, at App. 3; CP at 98. The County had a key to its lock, on the south arm, but not to the HOA lock, on the north arm. For the gate to be locked closed, the County would have to unlock its lock and remove a pin so that the metal sleeve could be slid to the left to cover both arms. A pin could then be inserted and locked to lock the gate closed.

3

 

**Photograph 2**                    **Photograph 3**

The south arm and the north arm are on hinges and swing open freely. The arms were designed so they could be secured open by snapping into stationary posts buried in the ground on either side of the HOA's road. For two years prior to the accident, the posts were in disrepair, and the arms could not be secured open.

Ryan Simpson, a member of the Fairwood Park I Homeowners Association and a homeowner near the east gate, stated in a declaration:

> Over the years I have observed many people using that roadway that goes to the pool area and beyond. I have seen walkers, with and without dogs, joggers, runners including cross country teams from Mead High School, bicyclists, skate boarders, and all types of motorized vehicles, including golf carts, cars, and trucks.

CP at 300.

Mr. Wheat was one of many non-HOA members who used the road. For more than two years prior to the fatal accident, Mr. Wheat had driven his golf cart between his home and the Spokane Country Club several times a week. His route included a shortcut, using the HOA's road through its park. Mr. Wheat drove his golf cart on the HOA's road approximately 400 times. There is no evidence that anyone ever asked Mr. Wheat to not drive on the HOA's road.

The last time that Mr. Wheat drove his golf cart on the HOA's road was the afternoon of May 17, 2014. After golfing that day, he traveled east on his way home. As Mr. Wheat approached the east gate, the north arm was open parallel to the road, but the south arm was partly closed so that the tip of that arm pierced the passenger side edge of the golf cart's front window. The momentum of the golf cart carried it forward, causing the arm to close somewhat, which also caused the tip of the arm to penetrate further. *See* Photograph 4, Br. of Resp't Spokane County, at App. 4; CP at 222. The tip struck Mr.

5

Wheat in his ribs and sternum with such force that it propelled him out of his cart. Mr.

Wheat died of his injuries.



**Photograph 4**

The Estate filed suit, alleging negligence against the HOA and the County. After

completion of discovery, the HOA and the County filed summary judgment motions. The

trial court granted the motions and dismissed the Estate's claims.

The Estate appealed.

ANALYSIS

*Summary Judgment Standard*

"When reviewing dismissal of a case on summary judgment, we employ the same inquiry as the trial court under CR 56(c)." *Ducote v. Dep't of Soc. & Health Servs.*, 167 Wn.2d 697, 701, 222 P.3d 785 (2009). Summary judgment is appropriate only if

> the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

CR 56(c). A material fact is one the outcome of the litigation depends on, in whole or in part. *Coggle v. Snow*, 56 Wn. App. 499, 509, 784 P.2d 554 (1990). "On a motion for summary judgment, all facts submitted and reasonable inferences therefrom must be viewed in the light most favorable to the nonmoving party." *SentinelC3, Inc. v. Hunt*, 181 Wn.2d 127, 140, 331 P.3d 40 (2014). Summary judgment is appropriate only if reasonable persons could reach but one conclusion from all the evidence. *Coggle*, 56 Wn. App. at 509.

*Negligence Standards for Landowners*

"A cause of action for negligence requires the plaintiff to establish (1) the existence of a duty owed, (2) breach of that duty, (3) a resulting injury, and (4) a

proximate cause between the breach and the injury." *Tavai v. Walmart Stores, Inc.*, 176 Wn. App. 122, 127, 307 P.3d 811 (2013).

The legal duty owed by a landowner to a person entering the premises depends on whether the entrant falls under the common law category of business invitee, licensee, or trespasser. *Iwai v. State*, 129 Wn.2d 84, 90-91, 915 P.2d 1089 (1996) (plurality opinion). The highest duty is owed to a business invitee, a lesser duty is owed to a licensee, and still a lesser duty is owed to a trespasser. *Botka v. Estate of Hoerr*, 105 Wn. App. 974, 983, 21 P.3d 723 (2001).

A business invitee is one who is expressly or impliedly invited on the premises for a purpose directly or indirectly connected with the business dealings of the owner or occupier. *Afoa v. Port of Seattle*, 176 Wn.2d 460, 467, 296 P.3d 800 (2013). A licensee is a person who is privileged to enter or remain on land only by virtue of the express or implied consent of the owner or occupier. *Id.*; *see also Botka*, 105 Wn. App. at 983. A trespasser is one who enters the premises of another without express or implied permission, but rather goes for his own purpose or convenience. *Botka*, 105 Wn. App. at 983.

A.    CLAIMS AGAINST THE HOA

1.    *The HOA did not owe Mr. Wheat the duty of a business invitee*

Mr. Wheat was not a business invitee.  Mr. Wheat was not invited on the HOA's

property by an HOA member for any HOA purpose.

2.    *The HOA did not violate the duty it owed Mr. Wheat as a trespasser*

Mr. Wheat was probably a trespasser.  Mr. Wheat used the HOA's road for his

own purpose as a shortcut to and from the Spokane Country Club.   The Estate argues that

the HOA is liable to Mr. Wheat even if he was a trespasser because the HOA's east gate

could not be locked closed or secured open.  We disagree.

A trespasser enters the premises of another at his peril.  *Winter v. Mackner*, 68

Wn.2d 943, 945, 416 P.2d 453 (1966).  A possessor of land owes a duty to a trespasser to

refrain from causing willful or wanton injury to him.  *Ochampaugh v. City of Seattle*, 91

Wn.2d 514, 518, 588 P.2d 1351 (1979).  In order to constitute "willful and wanton," the

act producing the injury must have been committed knowingly and intentionally, or must

have been committed under such circumstances as to evince a reckless disregard for

safety of the person injured.  *Bidlake v. Youell, Inc.*, 51 Wn.2d 59, 62-63, 315 P.2d 644

(1957).  In addition, the standard requires "'that a reasonable [person] would know, or

have reason to know, that such conduct would, *in a high degree of probability*, result in

substantial harm to another.'" *Johnson v. Schafer*, 110 Wn.2d 546, 549, 756 P.2d 134 (1988) (quoting *Adkisson v. City of Seattle*, 42 Wn.2d 676, 687, 258 P.2d 461 (1953)). From the evidence, a reasonable trier of fact can reach only one conclusion: the HOA had no reason to know that unlocked or unsecured gates presented a high probability of injury to another. The evidence therefore does not permit a reasonable trier of fact to find liability under this standard.

3. *The HOA did not violate any other duty potentially owed to Mr. Wheat*

The Estate posits two arguments why the HOA owed Mr. Wheat a duty higher than the duty owed a trespasser.

a. *Apparent public road*

Citing *Zuniga v. Pay Less Drug Stores, N.W.*, 82 Wn. App. 12, 917 P.2d 584 (1996), *Rogers v. Bray*, 16 Wn. App. 494, 557 P.2d 28 (1976), and secondary authorities, the Estate argues that an owner of a private road owes a duty of reasonable care if persons might mistakenly believe that the private road is a public road. The Estate reads the rule too broadly. The two cases stand for the proposition that a duty of reasonable care is owed where "'*the trespasser* is negligently led into believing that a private road is a public road.'" *Zuniga*, 82 Wn. App. at 15 (emphasis added) (quoting *Johnson v. Schafer*, 47 Wn. App. 405, 408, 735 P.2d 419 (1987), *rev'd on other grounds*, 110 Wn.2d 546; *see*

10

*also Rogers*, 16 Wn. App. at 496 ("If Rogers was misled," then a heightened duty was owed.).

Here, there is no evidence that the HOA negligently led Mr. Wheat into believing that the HOA's road was a public road. First, Mr. Wheat had to cross a sidewalk to enter the HOA's road. Second, the HOA's road is narrow and does not have any painted lines on it. Third, the HOA's road is gated at both ends, and the west gate is always closed. Fourth, when the east gate was closed, the sign on that gate plainly advised people of the private nature of the park and road. These plain visual cues would lead a reasonable person to believe that the road was private. In addition, Mr. Wheat would have observed these visual cues approximately 400 times over a period of two years. A reasonable trier of fact can reach only one conclusion: the HOA did not negligently mislead Mr. Wheat into believing that its road was a public road.

b. *Licensee by acquiescence*

The Estate argues that Mr. Wheat and other non-HOA persons routinely used the HOA road without objection by HOA members. Citing *Rogers v. Bray*, 16 Wn. App. 494, the Estate argues that this unobjected use ripened into a license to use the road. Even if this were true, we do not believe that the Estate has presented sufficient evidence for a reasonable trier of fact to find the HOA liable to licensees.

11

In *Memel v. Reimer*, 85 Wn.2d 685, 538 P.2d 517 (1975), the court adopted the

*Restatement (Second) of Torts*, § 342 (1965), which establishes the duty owed by owners

or occupiers of land to licensees:

> "A possessor of land is subject to liability for physical harm caused to
> licensees by a condition on the land if, but only if,
> (a) the possessor knows or has reason to know of the condition and
> should realize that it involves an *unreasonable risk of harm* to such
> licensees, and should expect that they will not discover or realize the
> danger, and
> (b) he fails to exercise reasonable care to make the condition safe, or
> to warn the licensees of the condition and the risk involved, and
> (c) *the licensees do not know or have reason to know of the condition
> and the risk involved.*"

*Id.* at 689 (emphasis added).

Here, the risk of harm was that the tip of one arm might protrude into the HOA

road just enough that it would not be seen by a user of the road and spear him. Here, had

the south arm been a bit more open, Mr. Wheat's golf cart would not have hit it. Had the

south arm been a bit more closed, the arm would have bounced off the golf cart's front

window. This was a highly unusual accident. We determine that a reasonable trier of fact

can reach only one conclusion: the remote risk of harm to licensees was not an

*unreasonable* risk of harm.

Were we to describe the risk of harm more broadly, our conclusion would not

change. For instance, the risk of harm to a licensee might be that one of the two arms

would be partially closed so a user might collide into it. Describing the risk of harm

broadly, we would note that each arm is comprised of two silver bars coming together

into a single bar, making each side of the gate a highly visible structure. In addition, a

sign is attached to the south arm that gives an additional visual cue to persons

approaching it. The size and thickness of the bars, especially coupled with the sign, give

ample warning to persons approaching the east gate. Mr. Wheat, who had passed through

the east gate approximately 400 times in the two years preceding the accident, was well

aware of the arms. In addition, because it had been two years since the arms could be

secured open, Mr. Wheat also knew that the arms sometimes were partially closed. We

determine that a reasonable trier of fact could reach only one conclusion: Mr. Wheat had

reason to know of the risk of harm posed by the arms that could not be secured opened.

## B. CLAIMS AGAINST THE COUNTY

For the first time on appeal, the Estate claims that the County was negligent under

the *Restatement (Second) of Torts*, § 386 (1965). We consider only those issues called to

the trial court's attention. RAP 9.12. We decline to address this new theory of liability.

The Estate next argues that the County is liable on the same bases as the HOA.

We disagree. The duties discussed above apply only to owners or occupiers of land.

13

Although the County used the HOA's road daily, this does not make it an occupier of the road.

The Estate finally cites *Palin v. General Construction Co.*, 47 Wn.2d 246, 287 P.2d 325 (1955). *Palin* stands for the proposition that a nonowner, doing work on land, can be liable for negligence when he or she creates a condition that permits a third person to foreseeably cause damages. *Palin*, 47 Wn.2d at 250. In *Palin*, the defendant construction company contracted to fill areas on property owned by King County. *Id.* at 248. Plaintiff had the right to the oil contained in a large tank on the property. *Id.* During the course of its work, the construction company damaged a valve on the tank. *Id.* at 249. The construction company made a temporary fix and left the worksite. *Id.* That evening, an unknown person came onto the land and vandalized the temporary fix, causing large amounts of oil to leak. *Id.* The trial court awarded damages to the plaintiff for the value of the lost oil. *Id.* The construction company appealed. *Id.* The *Palin* court affirmed, reasoning that the construction company had a duty to lock the valve or inform the owner of the situation. *Id.* at 250.

Relying on *Palin*, the Estate argues that the County's inability to lock the east gate foreseeably allowed someone to open the gate at a dangerous angle. However, there is no evidence that the County knew or should have known of a dangerous condition that

14

No. 35047-9-III
*Estate of Wheat v. Fairwood*

created a duty to remedy the situation or inform the HOA of the condition. Therefore, we

hold that the rationale for potential liability in *Palin* is inapplicable to the present case.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

Lawrence-Berrey, C.J.

WE CONCUR:

Korsmo, J.

Siddoway, J.

15